HOLMEN CREAMERY ASSOCIATION and another, Respondents,
vs. INDUSTRIAL COMMISSION OF WISCONSIN and another,
Appellants.

*May 3—May 21, 1918.*

*Workmen's compensation: Who are employees: "Casual employ-
ment:" Making repairs on building.*

1. The term "employment," as used in sub. (2), sec. 2394—7, Stats.
   1915, refers to the nature or kind of service rendered rather
   than to the nature of the contract of hiring.
2. An employment which "is but casual," within the meaning of
   said statute, is one which is only occasional, or comes at un-
   certain times, or at irregular intervals, and whose happening
   cannot be reasonably anticipated as certain or likely to occur
   or become necessary or desirable.
3. Repairs upon a building used for business purposes are an es-
   sential part of the business and, though they come at irregular
   intervals and the exact time when they will be needed cannot
   be foretold, are to be anticipated, provided for, and made when
   necessary or convenient; hence, although a workman who was
   injured while making repairs on a creamery building had been,
   on that as on several previous occasions, specially hired for the
   repair work only, his employment was not merely "casual,"
   within the meaning of sub. (2), sec. 2394—7, Stats. 1915.

APPEAL from a judgment of the circuit court for Dane
county: E. RAY STEVENS, Circuit Judge. *Reversed.*

Action to vacate an award of the *Industrial Commission*
allowing compensation to the defendant *Wallum* for injuries
sustained by him while in the employ of plaintiff *Holmen
Creamery Association.* There is no dispute in the facts.
*Wallum* was hired by the manager of the *Creamery Associa-
tion* to make some repairs on the creamery consisting of
mason work and plastering inside and outside of the build-
ing. He started to work about 10 o'clock in the forenoon of
November 26, 1916, and was injured about 3 o'clock in the
afternoon of the same day. He had previously worked for
the *Creamery Association* off and on and had built part of

the building, but had never been steadily employed by it. He was always hired specially whenever he did repair work for it, and was paid by the hour or day. It was understood that when these repairs were completed his employment terminated and that if he rendered further services it would be under a new employment. The circuit court vacated the award on the ground that the employment of *Wallum* was but casual within the meaning of sub. (2), sec. 2394—7, Stats. 1915. The *Industrial Commission* and *Wallum* appealed.

For the appellant *Industrial Commission* there was a brief by the *Attorney General* and *J. E. Messerschmidt,* assistant attorney general, and oral argument by *Mr. Messerschmidt.*

For the respondents the cause was submitted on the brief of *Roehr & Steinmetz,* attorneys, and *Julius E. Roehr,* of counsel, all of Milwaukee.

VINJE, J. The question raised by the appeal is, Was *Wallum* at the time of his injury an employee of the *Holmen Creamery Association* within the meaning of the Workmen's Compensation Act? Sec. 2394—7 of that act provides that

"The term 'employee' as used in sections 2394—1 to 2394—31, inclusive, shall be construed to mean: . . .

"(2) Every person in the service of another under any contract of hire, express or implied, oral or written, . . . but not including any person whose employment is but casual or is not in the usual course of the trade, business, profession or occupation of his employer." Stats. 1915.

In 1917 the legislature amended this section by striking out the words "is but casual or," so that in the future cases like the present will not arise.

It is quite evident that the term "employment" used in the quoted section refers to the nature or kind of service rendered by the employee rather than to the nature of his contract of hiring. The true test, therefore, is whether the service

rendered or the work done by the employee is of a casual na-
ture.    The difficulty of applying this test lies not so much
in the selection of a correct definition of the adjective *casual*
as in determining whether a given state of facts comes within
the definition selected.    Our standard dictionaries give six
or seven different definitions of the word, only two of which
need be considered.    The first or primary meaning of the
word is "happening or coming to pass without design, and
without being foreseen or expected, accidental, coming by
chance."    The secondary meaning is "coming without reg-
ularity   or   at   uncertain   times,   occasional,   incidental."
Neither of these definitions alone exactly fits the meaning
of the word as used in the statute.    As therein used it im-
plies an element of chance or lack of design or intention as
to the occasion that gives rise to the employment, but not as to
the hiring or service to be rendered when such occasion
has arisen.    Hence, an employment that is only occasional,
or comes at uncertain times, or at irregular intervals, and
whose happening cannot be reasonably anticipated as certain
or likely to occur or to become necessary or desirable, is but
a casual employment within the meaning of the statute.    It
is one that arises occasionally or incidentally and is not a
usual concomitant of the business, trade, or profession of the
employer.    *Gaynor's Case,* 217 Mass. 86, 104 N. E. 339,
L. R. A. 1916A, 363; *Uphoff v. Industrial Board,* 271 Ill.
312, 111 N. E. 128, L. R. A. 1916E, 329; *Thompson v.
Twiss,* 90 Conn. 444, 97 Atl. 328, L. R. A. 1916E, 506;
1 Honnold, Workm. Comp. § 62; L. R. A. 1916A, 247, note;
*Id.* 365, note.

The defendant *Creamery Association* was engaged in the
business of conducting a creamery.    For the proper conduct
of such a business a building was necessary.    It is the com-
mon experience of mankind that buildings need repairs from
time to time.    Indeed, it is so common that the Income Tax
Law allows for the deduction of repairs from rentals received,

and all business concerns of any magnitude provide for a repair account or a fund to meet such expenses. It is in evidence that the claimant here had several times repaired this building. The making of repairs, therefore, belongs to the category of things to be expected and provided for. True, repairs come at irregular intervals and one cannot accurately foretell just when they will be needed. But needed they will be in any business that endures for any considerable length of time. They are therefore a part of the employer's business, to be anticipated and met when necessity or convenience dictates. Being an essential and integral part of every business employing material things in its prosecution, no reason is perceived why one employed to make them should not be classed as an employee of the one for whom they are made. They are essential to the successful prosecution of every business whose implements are subject to the corroding touch of time and a usual concomitant thereof. ' They are foreseen, provided for, and made when necessary or convenient. The fact that one cannot exactly foretell just when they will have to be made is immaterial. On the same principle a proprietor of a meat market who has to hire extra help Saturdays or on busy days, though at irregular intervals, and does so, makes such extra help an employee within the meaning of the statute. *Jordan v. Weinman, post,* p. 474, 167 N. W. 810. And because the cleaning up after repairs is a part of the repair work, one employed to do that is an employee within the act. *F. C. Gross & Bros. Co. v. Industrial Comm., post,* p. 612, 167 N. W. 809.

*By the Court.*—Judgment reversed, and cause remanded with directions to reinstate and confirm the award of the *Industrial Commission.*

OWEN, J., took no part.