RUTHERFORD McFALL v. BARTON-MANSFIELD COMPANY, Appellant.— 61 S. W. (2d) 911.

Division Two, June 24, 1933.*

---

*NOTE: Opinion filed at October Term, 1932, April 20, 1933; motion for rehearing filed; motion overruled at May Term, June 24, 1933.

*McKay & McKay* for appellant.

*James A. Finch* and *James A. Finch, Jr.,* for respondent.

COOLEY, C.—This is an appeal by Barton-Mansfield Company, employer, from the judgment of the Circuit Court of New Madrid County affirming an award of the Workmen's Compensation Commission in favor of respondent McFall who was injured while in defendant's employment.

Barton-Mansfield Company is a Delaware corporation authorized to do and doing business in Missouri and Arkansas. It is engaged in the business of selling lumber and "building materials and supplies of all kinds." Its home office is at Jonesboro, Arkansas, where it maintains a yard. It has twenty-two yards in Arkansas and four in Missouri, one of which is located at Parma in New Madrid County where it conducts its business under the name of Parma Lumber Company. In the course of its business it sells and installs what are known as built up roofs. A built up roof can only be put on by experienced workmen. The company guarantees these roofs and the sale of such a roof includes its installation. The company keeps experienced men to do the work of installation with the assistance of inexperienced helpers and when a roof is sold the company sends experienced men from the home office to put it on. Prior to February 6, 1930, defendant, through its Parma yard or the manager thereof, sold to the public school at Parma a built up roof to be placed on a gymnasium there being built and sent from the Jonesboro office two experienced men, M. P. Moser and Lawrence Stallings, to put it on. Plaintiff, with two or three other inexperienced workmen, was

employed to assist in that work. Moser employed him and the other assistants and when present was in charge of the work. When he was temporarily absent Stallings was in charge.

Plaintiff began work on the morning of February 5, 1930, and was injured in the forenoon of February 6, 1930, by falling from the roof while engaged in the work for which he was employed. He sustained a severe injury resulting in permanent partial disability. He filed claim for compensation with the Workmen's Compensation Commission. There was a hearing before a referee, a supplemental hearing before another referee and upon defendant's application a review by the full commission. Upon such review the commission found plaintiff was permanently partially disabled "to the extent of 75 per cent," and awarded him compensation at the rate of $6.41 per week for three hundred weeks. The character and extent of plaintiff's disability and the appropriateness of the award as to amount are not questioned on this appeal. Further facts will be stated in connection with our consideration of contentions to which they relate.

■ I. At the outset we have to determine the question of this court's appellate jurisdiction of the cause. The amount involved is not sufficient to give us jurisdiction on that ground. We think, however, we have jurisdiction because of constitutional questions raised by defendant. On September 12, 1930, the date originally set for the hearing of plaintiff's claim before the referee, defendant filed before the referee what it denominated a plea in bar in which it challenged the constitutionality of the Workmen's Compensation Act on several grounds. Neither the referee nor the commission, of course, could determine the questions thus raised but the plea was certified to the circuit court as part of the record when the commission, on defendant's appeal, certified its record and proceedings to that court on June 6, 1931, which record included said plea in bar. On October 8, 1931, the cause was submitted to the circuit court on that record. Defendant also there filed a motion for judgment on the record, alleging several grounds, among which were the same constitutional grounds asserted in its former plea in bar, viz., that the act is unconstitutional because in violation of the following sections of the State Constitution: (a) Section 28, Article 2, guaranteeing trial by jury; (b) Section 30, Article 2, that no person shall be deprived of life, liberty or property without due process of law; (c) Section 28, Article 4, that no bill shall contain more than one subject, which shall be clearly expressed in its title; (d) paragraph 17, Section 53, Article 4, that no local or special law shall be passed regulating the practice or jurisdiction of, or changing the rules of evidence in judicial proceedings or inquiries "before courts

. . . commissioners . . . or other tribunals,'' and paragraph 32, same section, forbidding the enactment of a special law where a general law can be made applicable; (e) Section 1, Article 6, vesting the judicial power in certain named courts. Defendant further charged that the act is invalid because: (f) It denies defendant the right on appeal to have the court determine ''questions of fact and of law which is accorded it by the general statutes of the State,'' and (g) because it deprives defendant, a nonresident of the State, of the right to have the cause removed to the Federal courts.

In DeMay v. Liberty Foundry Co., 327 Mo. 495, 37 S. W. (2d) 640, defendants contentions a, e and f are definitely decided against it, as is also b, in effect. That the act in question is not violative of the due process of law provision of our Constitution is held in Pruitt v. Harker, 328 Mo. 1200, 43 S. W. (2d) 679; Waterman v. Chicago Bridge & Iron Works, 328 Mo. 688, 41 S. W. (2d) 575, determines point d against defendant.

■ The legislative act in question contains many related provisions and the title is long. Defendant has not attempted to point out or suggest wherein either the title or the act violates Section 28 of Article 4 of the Constitution, contenting itself with the bare statement in its brief that ''said bill contains more than one subject and the subject is not clearly expressed in the title.'' Since defendant has not seen fit to inform us of the specific objection it makes we decline to speculate as to what it may be and delve through the long enactment in an effort to find it.

■ The question of the right of removal to the Federal Court is not in the case. Defendant made no effort to remove the case to the Federal Court. Moreover, it might have rejected the act, leaving itself free to defend and invoke all legal rights if sued by plaintiff. It chose not to do so, thereby electing to accept the act (Sec. 3300, R. S. 1929) and is proceeding thereunder. It voluntarily submitted to the provisions of the act. [See DeMay v. Liberty Foundry Co., supra.] Having voluntarily brought itself within the jurisdiction of the State court, it cannot now renounce that jurisdiction and invoke the paramount jurisdiction of the national court. [Elsas v. Montgomery Elevator Co., 38 Fed. (2d) 303.] We rule against defendant's objections to the validity of the act.

■ It is suggested by respondent that since the constitutional questions raised had been decided before the appeal herein was taken the assertion of those questions should be treated as merely colorable and the constitutional questions not really in the case, leaving this court without jurisdiction, citing Dorrah v. Pemiscot County Bank (Mo.), 248 S. W. 960, and Little River Drainage District v. Houck, 282 Mo. 458, 222 S. W. 384. The former is hardly in point on the facts. Application of the principles laid down in the latter, we think,

sustains rather than defeats our jurisdiction. It is true that in the DeMay, Waterman and Pruitt cases, supra, this court decided all of the constitutional questions presented by defendant below and sufficiently briefed here, before the appeal herein was taken, but only very recently before. The DeMay case was decided January 5, 1931. Motion for rehearing was overruled March 31, 1931. It was not published so as to be accessible to lawyers generally for some weeks thereafter. The Waterman case, which for the first time decided some of the questions raised, was decided July 28, 1931, and the Pruitt case September 5, 1931, motion for rehearing overruled November 20, 1931. This appeal was taken October 29, 1931. Prior to the promulgation of any of said decisions defendant had filed its "plea in bar" before the referee suggesting these constitutional questions, doubtless having in mind that such questions must be raised at the first opportunity. While neither the referee nor the commission could determine such questions, the fact that defendant thus attempted to lodge them in the case indicates that it was urging them in good faith. They had not then been determined by this court. They were kept alive on the record throughout the case and were briefed here. Under these circumstances we cannot say that the constitutional questions are merely colorable and to be treated as not being in the case.

■ II. Appellant claims that under the statute it is a minor employer and as the business it is engaged in has not been determined to be hazardous to employees it is exempt from the Compensation Act. Major and minor employers are defined by Section 3302. (Unless otherwise indicated references to the statutes will be to Revised Statutes 1929. For corresponding sections in Mo. Stat. Ann., see Vol. 12, pp. 8228 et seq.) A major employer is one "who has more than ten employees regularly employed." One having "ten or less employees regularly employed" is a minor employer. Provision is made by the statute for determination by the commission of whether or not a minor employer's business is hazardous to employees. If it is he may be required to accept or reject the act as a major employer. Unless so determined to be engaged in an occupation hazardous to employees, a minor employer is exempt from the act. Defendant had not been determined to be engaged in an occupation hazardous to employees and having but nine employees regularly employed in Missouri it claims exemption from the act as a minor employer. It is conceded that defendant at and prior to the time of the accident had more than ten employees regularly employed in its Jonesboro yard alone.

The statute in defining "major employer" does not read that the employees referred to shall be employed in Missouri or under con-

tracts made in Missouri. It reads, "an employer who has more than ten employees regularly employed," without restriction as to place. It is to be given its plain, unrestricted meaning. This question, on similar facts, was fully considered by Division One of this court and decided adversely to the contention here made by appellant in Elsas v. Montgomery Elevator Co., 330 Mo. 596, 50 S. W. (2d) 130. We are satisfied with the reasoning and conclusion in that case. It is decisive of this point.

 III. Defendant disclaims liability on the ground, among others, that no written notice of plaintiff's injury was given to the employer as soon as practicable after the injury, as provided by Section 3336. That section provides that no proceedings for compensation shall be maintained unless written notice of the time, place and nature of the injury, and name and address of the person injured, shall have been given to the employer as soon as practicable after the injury but not later than thirty days after the accident, unless the commission shall find that there was good cause for failure to give the notice or that the employer was not prejudiced by failure to receive it.

The referee found "that the employer had notice of the accident" within the statutory time, and cited Schrabauer v. Schneider Engraving Product, 224 Mo. App. 304, 25 S. W. (2d) 529. The commission adopted that finding. There was no evidence showing the giving of a written notice within the statutory time but the evidence shows clearly and without dispute and defendant admitted at the hearing that it had actual knowledge of the accident and plaintiff's injury at the time it happened. It knew plaintiff's name and address. Moser, defendant's foreman in charge of the work, was temporarily absent when the accident happened but Stallings, in charge at the time, was present and witnessed it. Plaintiff was at once taken to a Dr. Husted at Parma. It is not clearly shown whether or not that was done by Stalling's direction but very shortly thereafter, the same forenoon, Moser returned from the errand on which he was engaged when the accident occurred and learned about it. He at once went to Dr. Husted and told him to take care of plaintiff "and send his bill to Barton-Mansfield Company at Jonesboro and they'd take care of it." Moser reported the accident and plaintiff's injury to the home office at Jonesboro by telephone the next day. Dr. Husted testified that he believed it was "their (defendant's) foreman" who brought plaintiff to him. Dr. Husted kept plaintiff under his care three days and plaintiff was then, by defendant's direction, taken to a hospital at Cape Girardeau where he remained about ten weeks. Defendant paid Dr. Husted for his treatment and, it is inferable from the evidence, paid the hospital bill at Cape Girardeau.

Appellant's sole contention on this point is that, notwithstanding its proved and admitted actual knowledge of the facts, plaintiff's failure to give the written notice precludes recovery. To sustain this contention under the facts of this case would be to "stick in the bark" of a literal construction of the statute and to ignore its spirit and purpose. The statutory requirement of written notice is a reasonable provision for the benefit of the employer. But the giving of such notice is not an unconditional prerequisite to recovery. It may be excused if the commission finds there was good cause for failure to give it or that such failure did not prejudice the employer. In this case it is in effect admitted that the employer was not prejudiced because it admittedly had actual knowledge and a written notice could have given it no information it did not already possess. The giving of a written notice in these circumstances would have been a mere formality.

In Schrabauer v. Schneider Engraving Product, supra, the St. Louis Court of Appeals held that where, as here, the claimant shows that the employer had actual knowledge or notice he thereby makes a prima facie showing of want of prejudice to the employer, and that thereupon the burden shifts to the latter to prove that, in spite of such actual notice, he has still been prejudiced by the failure to have received a written notice. Several Oklahoma cases are cited which support the holding. One of those cases in particular, Oklahoma Gas & Electric Co. et al. v. Thomas et al., 115 Okla. 67, 241 Pac. 820, wherein written notice had not been given but actual notice was shown, discusses the question at length.

The Schrabauer case was disapproved on another point by this court in Wheeler v. Mo. Pac. Railroad Co., 328 Mo. 888, 42 S. W. (2d) 679, but we do not find that it has been criticised in its holding above referred to relative to notice to the employer. The St. Louis Court of Appeals, in Buttinger v. Ely & Walker Dry Goods Co., 42 S. W. (2d) 982, again had before it a case where there had been a failure to give notice to the employer and on the facts therein held there could be no recovery. It does not appear in that case that the employer had actual notice. We do not understand that the court meant to recede from its prior holding on that point in the Schrabauer case.

In view of the admitted facts in this case and the fact that proceedings before the commission are somewhat informal, the commission's finding that defendant had notice, coupled with the fact that it awarded compensation, might, perhaps, be taken as equivalent to a finding that defendant was not prejudiced by the failure to receive *written* notice, the only finding on that question which the evidence and defendant's admission would sustain. There should have been a specific finding by the commission on this point. But whether or

not the commission's finding can be treated as a finding of no prejudice to defendant, if there ever was a case in which a rule such as that announced in the Schrabauer case and the Oklahoma cases cited should be applied it is this case. As applied to the facts of this case we think it accords with justice and sound reason. We accordingly rule this point against appellant.

■ IV. Defendant also denies liability because plaintiff did not file his claim for compensation within six months after the injury occurred. The statute, Section 3337, provides that no proceedings for compensation shall be maintained unless a claim therefor be filed with the commission within six months after the injury, "or in case payments have been made on account of the injury, . . . within six months from the date of the last payment." Plaintiff was injured February 6, 1930. He filed his claim with the commission on August 7, 1930, one day more than six months after the injury. But, as pointed out above, he was treated by Dr. Husted for three days after the injury and subsequently defendant, through its attorney, Mr. McKay, paid Dr. Husted for such treatment. We need not consider the payment of the hospital bill because plaintiff's claim was filed within six months from the date of the payment to Dr. Husted. If that payment was "on account of the injury," plaintiff's claim was filed in time under the statute. Defendant asserts the payment was not on account of the injury because: (a) It was made "denying any liability under the act" and "under a contract previously entered into between the company and the doctor," and had no reference to the Compensation Act; and (b) it was not "compensation" under the act and therefore was not a payment on account of the injury within the meaning of the statute.

We have searched the record in vain for any evidence tending to show a denial of liability coupled with the payment to Dr. Husted or anything said on that subject when payment was made to him. Neither do we find any evidence tending to show the alleged agreement between the company and the doctor or any agreement except that to be implied from Moser's testimony that he told Dr. Husted to take care of plaintiff and send his bill to the company which would pay it. In that conversation nothing was said about non-liability under the compensation act nor about that act. Dr. Husted testified that Mr. McKay gave him the check. The latter had Dr. Husted identify a receipt given by him at the time for the payment but the receipt was not offered in evidence nor its contents shown. There was no evidence tending to show that defendant was denying liability when it made the payment.

The statute, Section 3315, provides certain compensation to be paid to an injured employee for permanent partial disability "in lieu

of all other compensation, *except that provided under section* 3111 *of this chapter.*'' (Italics ours.) Section 3111 provides: ''In addition to all other compensation,'' the employee shall receive and the employer shall provide such medical, surgical and hospital treatment as may be reasonably required for the first ninety days after injury, not exceeding an amount named. Such medical, surgical and hospital treatment is thus by the terms of the statute made compensation and payable on account of the injury. It was correctly so held in Elsas v. Montgomery Elevator Co., 330 Mo. 596, 50 S. W. (2d) 130, supra. In that case the claim would have been barred but for the payment of a hospital bill. The defendant contended that such payment did not toll the statute. It claimed and offered to prove that the payment was not made with reference to the Compensation Act but on the theory that the case involved common-law negligence, a theory which, however, it had not disclosed to the claimant. The court held that the payment tolled the statute and that the defendant's undisclosed intent in making it was irrelevant, saying *arguendo* that a debtor's intent to start the Statute of Limitations anew ''is presumed from the bare fact of payment unaccompanied by a denial of such intention.''

The commission in this case found that the claim was filed ''within the time prescribed'' by Section 3337, a finding and conclusion fully supported by the evidence.

■ V. It is contended by appellant that plaintiff's employment was ''casual and not incidental to the operation of the usual business of the employer'' and that under Section 3303 the defendant is exempt from liability in this case. This contention is the one most strongly urged and presents the most serious difficulty in the case.

Section 3303 exempts from the application of the Compensation Act ''the following employments: . . . Third: Employments which are but casual or not incidental to the operation of the usual business of the employer.''

Appellant also invokes, as defining or tending to define paragraph three of Section 3303, paragraph d of Section 3305, which reads: ''An employee who is employed by the same employer for more than five and one-half consecutive work days shall for the purpose of this chapter be considered a regular and not a casual employee.''

As we understand appellant's contention on this proposition it proceeds chiefly on the theory that plaintiff's employment is to be deemed casual because not incidental to the usual business of the employer rather than because he was employed for only a short time and on a particular job.

The evidence, given by defendant's employees, shows that defendant sold built-up roofs like the one here involved as and when it

could, through all of its various yards, such sales always including installation. It kept two experienced men, Moser and Stallings, regularly employed, whose duties included superintending the installation of such roofs. When not so employed they did other work about the Jonesboro yard. Moser, who had been thus employed by defendant about six years, testified that during the year immediately preceding plaintiff's injury he had put on for defendant about fifteen such roofs and would "average as much as one roof a month." Stallings testified that defendant did "a good deal of that kind of work" in Missouri and Arkansas. "Q. They (defendant) follow that as a part of their business selling those roofs and putting them on? A. Yes, sir." Moser summed up the situation thus: "They (defendant) couldn't exist on that alone. There isn't enough sale of roofs of that kind justifying them to deal in them altogether."

It further appears from the evidence that defendant did not keep inexperienced men, "common laborers," regularly employed to assist in putting on such roofs, but when a sale was made the man or men sent by defendant to put on the roof, usually Moser or Moser and Stallings, employed such additional help as might be needed for that occasion. Plaintiff's employment was of that character. While nothing was said at the time he was employed about the length of time of his employment or how long it would take to put on the roof, it is apparent that he understood, as did Moser who employed him, that the employment then made would cease upon completion of that job. The job in fact took three days. Moser testified that usually it took no longer than that to install a roof, though he had installed one requiring six days.

Plaintiff had occasionally and at irregular intervals worked for defendant at its Parma yard, work such as unloading lumber. His last previous employment by defendant was two or three weeks prior to the employment here in question.

I. We cannot concede appellant's contention that the sale and installation of these roofs was not a part of its usual business. It kept and offered them for sale and sold as many as the demand therefor made possible. And withal, it did a substantial business in that line. It may not have sold enough of those roofs to justify it in dealing in that one item alone, as Moser said, and that might be true as to any one kind of building supplies in which it dealt. But its business was not limited to selling any particular kind of building material or supplies. A dealer in farm implements and machinery, keeping for sale and, whenever he could, selling farm tractors, might not be able to sell enough tractors to justify him in dealing in them alone, but could it for that reason be said that the sale of tractors was not part of his mercantile business? Clearly, under the facts

shown, the sale and installation of these built-up roofs must be considered as a part of the usual business of defendant employer within the meaning of the statute.

2. A more difficult question which, though not stressed, is presented by appellant's brief and by the record, is this: Granting that, as we hold, plaintiff's employment was incidental to the operation of the usual business of the employer within the meaning of the statute, was it nevertheless "casual" and not within the Compensation Act because plaintiff was not regularly employed but was employed only on a particular job, expected to last but a few days and which, as it turned out, was completed in three days? We do not find that this question has heretofore been decided by this court.

The decisions in other jurisdictions have not been uniform. Differences in the wording of the respective statutes under construction or in the facts involved account for some of the differences in the conclusions reached. But statutes worded similarly to the third paragraph of Section 3303, supra, have been differently construed. Some courts have held that in construing such language of the statute the nature of the work to be performed in the employment is the determining factor; while others hold that the question is to be determined by analysis of the contract of hiring. Of the latter class of cases Western Union Telegraph Co. v. Hickman (C. C. A.), 248 Fed. 899, and cases therein cited from Massachusetts, Illinois and California, are examples. See also for collation of authorities on this subject annotations to Mitchell v. Maine Feldspar Co. (Me.), 33 A. L. R. 1447, 1452 et seq. The principal case there reported tends to support the view that analysis of the contract governs.

In Carrigan v. Western Radio Co., 44 S. W. (2d) 245, cited by respondent, the Kansas City Court of Appeals had this question under consideration but there was no express holding on this precise point as the facts did not call for decision thereof. There the plaintiff was not hired for a limited time. He was employed to work about the defendant's plant with nothing said as to the exact nature of his duties nor as to the duration of his employment. It was held that under either of the theories above suggested his employment was not casual. The reasoning of the case we think tends to support the theory that the nature of the work to be done rather than analysis of the contract of hiring should be the test.

The above case, however, does decide, and we think correctly, another point suggested here, viz., that the mere fact that an employee is injured in less than five and a half days from the time he was employed and began work does not make him a casual employee or his employment "casual" under the statute. The authorities generally hold that the length of time the employee has worked before being

injured does not determine the question. In the Carrigan case the plaintiff was injured the day after he began work.

A case more nearly in point is the recent decision of the St. Louis Court of Appeals in Sonnenberg v. Berg's Market, 55 S. W. (2d) 494. The facts are similar to those herein except that Sonnenberg was employed to do extra work the necessity for which recurred regularly every Saturday while in this case the necessity for the extra work did not arise with such definite regularity. The principle applied and the reasoning of the court in the Sonnenberg case sustain the award in this case. Construing the word "employment," as used in the third paragraph of Section 3303, the court said:

"It is a mistake to suppose, however, that the word, as used in the act, refers to the employing of the particular employee. For this is not so. The word, as used in the act, refers to the employment, or work, the employee is engaged to do. It is the employment, not the employing of the particular employee, that is determinative. The question is not whether or not the employing of the particular employee was casual, but the question is whether or not the employment, or work, was casual."

In Utah Copper Co. v. Industrial Commission, 193 Pac. 24, the Supreme Court of Utah construed a provision of the Utah Compensation Law similar to the third paragraph of our Section 3303. The Utah statute excluded "any person whose employment is but casual, or not in the usual course of trade, business, profession, or occupation of his employer." The facts in the case are analogous to those of the instant case and the case is directly in point on this question. Expressive of our views we quote as follows:

"Appellant further maintains that admitting that the employment was in the usual course of the business of the employer, nevertheless it was but casual employment, and for that reason it is not within the jurisdiction of the commission to make an award. The authorities are not uniform in defining what constitutes casual employment under acts similar to our Workmen's Compensation Act. As indicated, there was no regularity of employment or assurance of employment at any time or at all. It was only when the exigencies of the situation required extra workmen in addition to the regular employees of appellant company that the deceased or others engaged in repairing the canal at this or other times were employed. At the time of the employment of the deceased nothing was said as to the length of time that such employment would continue. It was understood that as soon as the necessary repairs were made upon the canal such employment would cease. These facts are not in dispute. If this court should follow the conclusions reached by the Supreme Courts of Massachusetts and Illinois, and, possibly, Pennsylvania,

the applicant must be denied relief in this case. (Citing cases from Mass. and Ill.)

"The intent of the legislation in question was to create a new or additional burden upon the industries of this state not heretofore borne by such industries, and to establish a system whereby the industries should bear the cost of providing for those injured while engaged in such industries or the dependents of those sustaining injuries resulting in death. Such being the object sought, it is, in our judgment, more in consonance with that purpose to conclude that it was not the intention of the Legislature to exclude from the operation of the act any one engaged in work necessarily required in the usual prosecution of such industries, and that the duration of such employment or the infrequency of the same ought not to control the courts in determining whether the employment was casual or otherwise. If the employment was essential and was required in the prosecution of the regular business of the industry, the industry, in order to carry out and effectuate the purpose of the act, should pay for any injuries sustained." [193 Pac. l. c. 29.]

The opinion in the Utah Copper Co., case cites Holemen Creamery Assn. v. Industrial Comm., 167 Wis. 470, 167 N. W. 808, the reasoning and conclusion in which sustain the Utah court's decision. In the Wisconsin case the claimant was employed for a specific task, to make certain repairs on the employer's creamery building. He had previously worked for the creamery association "off and on" but had never been steadily employed by it. It was understood that when the repair work was finished his employment terminated. He was injured the same day he began work. The Wisconsin statute excluded "any person whose employment is but casual or is not in the usual course of the trade, business, profession or occupation of his employer." The court said:

"It is quite evident that the term 'employment' used in the quoted section refers to the nature or kind of service rendered by the employee rather than to the nature of his contract of hiring. The true test, therefore, is whether the service rendered or the work done by the employee is of a casual nature."

The court held that the employment was not casual and that the claimant was entitled to compensation. See, also, F. C. Gross & Bros. Co. v. Industrial Comm. (Wis.), 167 N. W. 809, and Jordan v. Weinman (Wis.), 167 N. W. 810, which follow the Holemen Creamery Association case.

In Eddington v. Northwestern Bell Telephone Co., 201 Iowa, 67, 202 N. W. 374, the court, answering a contention that the plaintiff's employment was casual and therefore within the statutory exception to the Compensation Law, well said:

"It should always be borne in mind, as the pole-star of construc-

tion of any statute, that the rule is broader than the exception; *that* the exception is specific rather than general; and that therefore doubts and implications should be solved in favor of the rule rather than of the exception.

"The clear objective of the Compensation Act is to protect the employee against the hazards of the employer's trade or business. When the relation of employer and employee is established, and when the employee is subjected to the hazards of his employer's trade or business, and suffers injury therefrom while so engaged in the due course of his employment, the excepting proviso of the statute ought not to be enlarged by difficult or doubtful construction so as to render such an injury noncompensable." [202 N. W. 1. c. 377. See, also, Pfister v. Doon Electric Co. (Iowa), 202 N. W. 371; Nebraska Natl. Guard v. Morgan, 112 Neb. 432, 199 N. W. 557.]

It must be borne in mind also that the provisions of the Compensation Act are to be liberally construed to effectuate its purpose. [Sec. 3374, R. S. 1929; Elsas v. Montgomery Elevator Co., 330 Mo. 596, 50 S. W. (2d) 130, 134, supra; Pruitt v. Harker, supra.]

We think the provision of Section 3305, paragraph d, was not intended to mean that all employments are to be deemed casual within the meaning of the third paragraph of Section 3303 unless the employee has been employed by the same employer for more than five and a half consecutive work days, but rather that when he has been so employed he is to be deemed for the purpose of the Compensation Act a regular and not a casual employee, regardless of the nature of the service performed. It was so held and we think correctly in Carrigan v. Western Radio Co., supra, q. v.

In some of the cases dealing with the question of casual employment reference is made to the insurance feature of the compensation acts and that the statutes contemplate that the employer should have some basis from which to estimate the number of employees for whom he must provide insurance. This feature of the question affords no difficulty in a situation such as we have here While defendant's sales of built-up roofs may not come at regular intervals, such sales are a part of its regular business. It should be able to estimate from its experience and knowledge of the trade demand the approximate amount of such business it is likely to have and to provide therefor as for any other part of its business.

In our opinion the St. Louis Court of Appeals, in Sonnenberg v. Berg's Market, supra, correctly construed the word "employments" as used in Section 3303; and under the facts of this case we think plaintiff's employment was not casual. For the reasons set forth it is our conclusion that the judgment of the circuit court affirming the

award of the commission is correct. It is accordingly affirmed. *Westhues* and *Fitzsimmons*, *CC.*, concur.

PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the court. All concur; *Leedy, J.,* not sitting.