ANTHONY MARCH, RESPONDENT, v. J. M. BERNARDIN, RECEIVER, ETC., APPELLANT.—76 S. W. (2d) 706.

Kansas City Court of Appeals. November 13, 1934.

*Hunter & Chamier* for respondent.

*Walter C. Goodson* for appellant.

BLAND, J.—This is an appeal from a judgment affirming an award of the compensation commission. The award was in favor of the claimant and was in a sum totalling $2304.98.

It is claimed by defendant that claimant's employment with him was of a character not incidental to the operation of defendant's usual business, that of coal mining and also that the employment was casual (see Section 3303, R. S. 1929).

The facts show that defendant operated a coal mine at Bevier having located on the premises four boilers which were used for hoisting purposes and probably, also, for heating. It was while plaintiff was working on one of these boilers, under an employment by the defendant, that he was injured.

Claimant and his helper went to work on Saturday morning and worked Sunday until about noon, when a piece of metal flew into claimant's eye while he was chipping the boiler shell. The accident resulted in the loss of his eye. He did not work the rest of the day because he. had no material, but resumed work the next morning (Monday) and completed the job on the Tuesday following.

It appears that claimant was a boiler maker by profession but, up to a few days prior to doing the work for defendant, had been digging coal at another mine. He had no shop. The tools that he used in doing the work for defendant were partly his own and partly that of defendant. The work was such that it required the services

of an expert and defendant had no one qualified among his employees to do such work. Claimant, also, needed an expert helper and defendant agreed that he was to furnish his own helper. Claimant testified that he had "absolute control" of his helper and could discharge him any time he pleased. "I was at liberty to get who I wanted." He and his helper worked on an hourly wage basis and their time was turned in to defendant by claimant at the end of the work and payment was made by defendant. The two worked thirty-seven hours. Claimant procured and paid for the material that went into the work and he was afterwards recompensed for the actual amount of his outlay therefor. However, the reason that claimant purchased the material was because it was thought by defendant that he could procure it sooner than the defendant. Claimant had entire control of the work and was in no manner advised by any employees of the defendant during the course thereof.

The evidence shows that boilers in use sooner or later require repairing; that the boilers of the defendant needed repairing about once a year and that this repairing "is a part of the usual routine business of the company;" that claimant had been repairing boilers for the defendant and the company, for which defendant is the receiver, off and on for two or three years prior to the accident and altogether had put about four patches on them; that there may have been other boiler makers who did work on defendant's boilers but apparently claimant was usually called to perform that work. The work would require only a few days and, of course, claimant's employment by defendant was not continuous.

It was defendant's desire to resume operations at the mine on December 6, 1932. The work at the mine could probably have been carried on by the use of the three boilers that were in repair, but none of the boilers could be conveniently repaired while the mine was in operation. The foreman testified, however, that "they (defendant) needed the boiler." There is a dispute as to whether there was an agreement as to the time in which the repairs on the boiler were to be completed. The foreman testified that this was to be on December 6 while claimant testified that there was no understanding on this subject; that the only agreement with reference to the matter was that he and his helper were to work eight or nine hours and, if necessary, he was to work a week or more on it; that the job was to be finished "as soon as we could."

We think there is no question but that the employment of the claimant was incidental to the operation of the usual business of the defendant.

In the case of Utah Copper Co. v. Industrial Comm., 57 Utah, 118 (cited with approval by the Supreme Court of this State in McFall v. Barton-Mansfield Co., 61 S. W. (2d) 911, 916), the facts disclosed that the Utah Copper Company was engaged in the min-

ing business and procured water for the operation of its mine from a canal; that claimant was injured, not while employed at the work of mining but while repairing the canal; that it was the custom, when repairs were required to be made on the canal, for men to be employed by the copper company from any place where they could be obtained; that ordinarily farmers who resided near the canal were hired for the work; that deceased was one of these farmers; that he had been employed once before the time he was killed for a short period of time to assist in the work on the canal; that he had worked one day and part of the next when he received an injury resulting in his death. The court said, l. c. 130:

"Any one employed in constructing or repairing a ditch or other means of conveying water used in the business of the appellant is just as definitely employed and engaged in the usual occupation or business of the employer *as is a machinist engaged in assembling or repairing a machine operated in taking ore from the company's mines.*"

. . . . . . .

"It must, therefore, in our judgment, necessarily follow that one employed as was the deceased in making repairs on that canal was engaged in an employment necessary in conducting the usual business of the company." (Italics ours.)

It is claimed by the defendant that:

"The evidence reveals that the cause for the hiring of the respondent employee, in this case was the accidental, unexpected, unusual chance occurrence of a boiler springing a leak, and the employment of respondent was for a limited, definite time of a few hours to do a particular job or specific kind of work of putting on a boiler patch. Under all the facts in this case the employment was casual."

This contention of the defendant must likewise be disallowed. It was stated in the case of Holmen Creamery Assn. v. Industrial Comm., 167 Wis. 470, 472 (cited with approval in the McFall case):

"Our standard dictionaries give six or seven different definitions of the word (casual), only two of which need be considered. The first or primary meaning of the word is 'happening or coming to pass without design, and without being foreseen or expected, accidental, coming by chance.' The secondary meaning is 'coming without regularity or at uncertain times, occasional, incidental.' Neither of these definitions alone exactly fits the meaning of the word as used in the statute. As therein used it implies an element of chance or lack of design or intention as to the occasion that gives rise to the employment, but not as to the hiring or service to be rendered when such occasion has arisen. Hence, an employment that is only occasional, or comes at uncertain times, or at irregular intervals, and whose happening cannot be reasonably anticipated as

certain or likely to occur or to become necessary or desirable, is but a casual employment within the meaning of the statute. It is one that arises occasionally or incidentally and is not a usual concomitant of the business, trade, or profession of the employer.''

While the courts of this country do not agree as to the circumstances under which an employment is casual, the Supreme Court of this State, in the case of McFall v. Barton-Mansfield Co., supra, followed the rule laid down by the Supreme Courts of Wisconsin and Utah. The McFall case, we think, is directly in point and is an authority against the contention of the defendant. In that case the employer, among other things, was engaged in furnishing and installing what was called ''built up roofs.'' The employer kept two expert men regularly employed whose duties included the installation of such roofs, but in such installation they were required to employ ''inexperienced men'' or common laborers to assist them. These inexperienced men were not regularly employed. Claimant was one of these common laborers or inexperienced men. His employment was to cease upon the completion of the job upon which he was injured, which took three days. Claimant had occasionally and at irregular intervals worked for the defendant in loading lumber and the like. His last previous employment by defendant was two or three weeks prior to that in question. The Supreme Court held that the employment was not casual, quoting extensively from the case of Utah Copper Co. v. Industrial Comm., supra, and citing with approval Holmen Creamery Assn. v. Industrial Comm., supra.

In the Holmen Creamery Assn. case claimant was employed for a specific task to make certain repairs on the employer's creamery building. He had previously worked for it ''off and on'' but had never been steadily employed by it. It was the understanding that when the repair work was finished his employment terminated. He was injured on the same day that he began work. Our Supreme Court, in the McFall case, l. c. 917, quoted with approval the following from the Holmen Creamery Assn. case:

'' 'It is quite evident that the term ''employment'' used in the quoted section refers to the nature or kind of service rendered by the employee rather than to the nature of his contract of hiring. The true test, therefore, is whether the service rendered or the work done by the employee is of a casual nature.' ''

In allowing compensation in the Holmen Creamery Assn. case, the Supreme Court of Wisconsin said, l. c. 473:

''It is in evidence that the claimant here had several times repaired this building. The making of repairs, therefore, belongs to the category of things to be expected and provided for. True, repairs come at irregular intervals and one cannot accurately foretell just when they will be needed. But needed they will be in any business that endures for any considerable length of time. They

are therefore a part of the employer's business to be anticipated and met when necessity or convenience dictates. Being an essential and integral part of every business employing material things in its prosecution, no reason is perceived why one employed to make them should not be classed as an employee of the one for whom they are made. They are essential to the successful prosecution of every business whose implements are subject to the corroding touch of time and a usual concomitant thereof. They are foreseen, provided for, and made when necessary or convenient. The fact that one cannot exactly foretell just when they will have to be made is immaterial."

In the case of the Utah Copper Co. v. Industrial Comm., supra, the court held that the repairs being made upon the canal when the workman was killed were not work of a casual nature, saying, l. c. 131:

"It was not the intention of the Legislature to exclude from the operation of the act anyone engaged in work necessarily required in the usual prosecution of such industries, and that the duration of such employment or the infrequency of the same ought not to control the courts in determining whether the employment was casual or otherwise. If the employment was essential and was required in the prosecution of the regular business of the industry, the industry, in order to carry out and effectuate the purpose of the act, should pay for any injuries sustained."

In the case at bar the evidence shows that defendant's boilers would get out of repair and that it was necessary to keep them in repair in order to operate his mine. That being true, the work claimant was engaged in was not casual, although such repairs were not required at regular intervals and no one knew in advance when such employment would be required.

From all we have said the judgment should be affirmed and it is so ordered. All concur.