Theodore NABORS, Claimant (Plaintiff), Respondent,

v.

UNITED REALTY COMPANY, a Corporation, Employer, and Maryland Casualty Company, a Corporation, Insurer (Defendants), Appellants.

No. 29575.

St. Louis Court of Appeals.

Missouri.

Feb. 5, 1957.

Motion for Rehearing or to Transfer to Supreme Court Denied and Opinion Modified on Court's Own Motion March 5, 1957.

Moser, Marsalek, Carpenter, Cleary & Carter, J. C. Jaeckel, St. Louis, for appellants.

Thomas L. Sullivan, Julius Habenicht and William B. Quinn, St. Louis, for respondent.

HOUSER, Commissioner.

This is an appeal from a circuit court judgment affirming the industrial commission's award of 80 weeks workmen's compensation at $30 per week in favor of Theodore Nabors and against United Realty Company and its insurer. The commission found that Nabors was an employee of the realty company; that the president of the latter directed and controlled the work of the employee at the time of the accident; "that the carrying out of obsolete and worn-out tanks and equipment was a necessary and essential part of the business of the employer and that it had been their practice and procedure in the past to have men take away accumulations of obsolete and worn-out equipment and furniture and

also accumulations of paper and trash," and that the employee "was carrying out the regular and usual work of this employer at the time he was injured, and that he was in the service of said employer at said time."

United Realty Company, of which Irwin H. Koplar is president and manager, owns and operates three apartment buildings in St. Louis. In the basement of the building at 4011 Delmar Boulevard there were two hot water tanks, disconnected from the heating plant, to be transported to a location in St. Louis County, there to be kept in storage. The tanks were quite heavy, each weighing from 600 to 700 pounds.

Claimant is a truck driver and laborer. He was working in the regular employ of St. Louis Public Service Company five days each week, earning $1.63 an hour or $64 per week. He owned a motor truck equipped with a chain hoist for lifting heavy objects. He supplemented his regular income by working and hauling for others after hours and on Saturdays and Sundays. He hauled all types of salvage, including bath tubs and furnaces, from hotels and apartment buildings whenever and from whomever he could obtain employment. He would work for cash or accept the junk he hauled away as payment for his services. Jobs were obtained through friends and by personal solicitation. When he required assistance on a particular job he hired helpers.

The evidence, stated most favorably to claimant, disclosed these facts: On September 6, 1952 claimant entered into an oral agreement with Koplar to remove the two tanks and haul them to a place in St. Louis County for storage. No agreement was reached as to how much he was to be paid. Claimant brought one Goldfield with him as a helper and also one Jackson, whose services Goldfield had procured at the suggestion of claimant. Koplar looked at the truck and equipment to see if it was satisfactory for the heavy lifting. The tanks lay on the floor in front of the furnaces. Koplar told claimant that he did not want the furnaces damaged, that the best way to get the tanks out of the basement was through a basement window, and suggested that they try to get them out that way. Koplar then went back to his office in the building. The men tried but were unable to get the tanks through the window. It was too small. The tanks were 30 inches in diameter and 10 feet or more in length. Claimant informed Koplar of the situation. Koplar showed claimant some steps 30 or 40 feet from the furnaces. The steps led from the basement to the alley. Koplar told claimant to take the tanks up the steps and out the door. The tanks were too heavy to drag or carry across the floor. Koplar did not want the basement door scratched. The best way to get the tanks to the steps was to roll them. Claimant carried nothing on his truck for that purpose. Koplar told claimant that he would supply a dolly (a four-wheeled truck) on which to roll the tank to the steps and suggested that they slide the tanks up the concrete steps. The men put the tank on the dolly, which broke down under the weight. Koplar then gave the men three or four short lengths of pipes on which to roll the tanks on the steps. This was Koplar's idea. For 2 or 2½ hours and until shortly before noon, when he left for lunch, Koplar was "in and out of the basement." Koplar said that he did not want the concrete steps cracked and showed them how to get the tanks up the steps by laying boards down on the steps and sliding the tanks. The boards were supplied by Koplar. He also supplied some blocks, the size and purpose of which were not described. The first tank was slid up the steps by the use of the chain hoist, and safely loaded on the truck. It was necessary to unscrew a pipe that projected from one of the tanks in order to get it up the steps. The men used a wrench supplied by Koplar to do this. While pulling the second tank up the steps with the chain hoist and while claimant was standing astraddle the tank the chain broke loose and the tank rolled or slid back down the steps, striking and breaking claimant's leg. Koplar was not then

present. One of the men ran to Koplar's office to call an ambulance. Koplar had gone to lunch but the call was placed by another and claimant was taken to a hospital. Goldfield later loaded the second tank with additional help he procured, and delivered the tanks to the county. Koplar paid Goldfield by giving him some old folding beds, which the latter sold for $20. The realty company frequently had paper and debris hauled away from its various apartment houses. The usual procedure was to contract with somebody to haul the paper away and pay the hauler. As far as salvage was concerned the realty company either paid for hauling it away or would give the salvage to the hauler for removing it.

■ The first question on this review is whether the commission's finding that claimant was an *employee* of appellant realty company is supported by competent and substantial evidence upon the whole record. Where the facts are undisputed the court may declare as a matter of law whether one is an employee or an independent contractor. Hackler v. Swisher Mower & Machine Co., Mo.App., 284 S.W.2d 55. It is conceded that claimant was either the one or the other, and the parties have joined issue on the effect of claimant's testimony on the issue. Appellants claim that, assuming the truth of claimant's testimony as to Koplar's activities, no right to control or exercise of control was demonstrated; that nothing more than permissible suggestions as to details was shown. We will, therefore, recite the legal tests to be applied and then examine the evidence to determine whether, giving claimant the benefit of all reasonable inferences supporting his position, the evidence supports the finding of the commission that claimant was an employee of appellant realty company. Vaseleou v. St. Louis Realty & Securities Co., 344 Mo. 1121, 130 S.W.2d 538; McKay v. Delico Meat Products Co., 351 Mo. 876, 174 S.W.2d 149. Whether in a given case a worker is an employee or an independent contractor depends upon the right of the employer to control his physical conduct in the performance of the details, i. e. the manner and method, of doing the work. In ascertaining the existence of the right to control the following factors are to be considered: the reservation in the contract of the right to control, or the actual exercise of control; the right in the employer to discharge the worker at any time without incurring liability for breach of contract; the payment of wages by the hour rather than by an agreed lump sum; the supplying by the employer of tools, machinery and appliances necessary to accomplish the work; the personal nature of the employment (whether the worker has the right to substitute the services of other persons), and whether the employer has the right to hire, discharge and determine the pay of those who assist the worker in the performance of the work. Maltz v. Jackoway-Katz Cap Co., 336 Mo. 1000, 82 S.W.2d 909; Miller v. St. Louis Realty & Securities Co., Mo.App., 103 S.W. 2d 510, 513; 1 Larson, Workmen's Compensation Law, § 43.10, p. 624. Of these factors the right to control the details of the work is of "extreme," Garcia v. Vix Ice Cream Co., Mo.App., 147 S.W.2d 141, and "supreme" importance, Horn v. Asphalt Products Corporation, Mo.App., 131 S.W.2d 871, indeed is the "primary test," Hackler v. Swisher Mower & Machine Co., supra, and the one factor that is entitled to the greatest weight. McKay v. Delico Meat Products Co., supra; Coy v. Sears, Roebuck & Co., 363 Mo. 810, 253 S.W.2d 816; 1 Larson, Workmen's Compensation Law, § 43.30, p. 627. We think that the evidence clearly shows that appellant realty company, through its president, actually exercised the right to control the physical actions of claimant in the performance of the details of the manner and methods of doing the work. Koplar told claimant to take the tanks out the window. When it became apparent that this was impossible claimant did not exercise his own judgment in the solution of the problem. Instead he sought directions from Koplar, who pointed out another exit and directed

that the tanks be taken out that way. Thereafter Koplar exercised control over the most minute details of the work, supplied the ideas as to how the physical problems were to be overcome, and exercised general supervision. For 2 to 2½ hours he was in and out of the basement, checking on the progress of the work. We are unable to adopt the view of appellants that the directions and control exercised by Koplar were in the nature of friendly advice or mere suggestions given as a convenience and in order to render the task less laborious. Instead it is clear that the supervision given amounted to the exercise of authoritative direction and control. In addition to the exercise of control, there is the added factor that Koplar supplied the tools and appliances necessary to accomplish that part of the work in the performance of which the injury was sustained. It is true that there are factors in the case indicative of the status of independent contractor, such as the right of claimant to substitute the services of others and to hire and fire his helpers, but, as indicated in Horn v. Asphalt Products Corporation, supra, if it appears that the relationship is such that the party who is having the work done has reserved to himself the right (whether exercised or not) to supervise and control the work of the other party and direct the details of its performance, the latter is to be deemed the employee of the former "regardless of any existing feature of the relationship which might otherwise tend to support the theory of independent contractor." [131 S. W.2d 872.] Consequently, in view of the great weight accorded the factor of actual exercise of control, coupled with the fact that the company president supplied the tools and appliances necessary in the performance of the work, we have concluded that the commission properly ruled that claimant was an employee of appellant realty company.

 The next question is whether claimant was a *regular* employee, entitled to compensation as such, or a *casual* em-

ployee excluded by § 287.090 RSMo 1949, V.A.M.S. from the benefits of the Act accorded by § 287.120 RSMo 1949, V.A.M.S. Section 287.090, supra, does not define casual employment. The courts have defined it as employment which happens or comes to pass by chance, without design, without being foreseen or expected, accidental, fortuitous, occasional, incidental; employment which comes without regularity, Sonnenberg v. Berg's Market, 227 Mo.App. 391, 55 S.W.2d 494; Tokash v. General Baking Co., 349 Mo. 767, 163 S.W.2d 554; which arises occasionally, or incidentally, or as a matter of chance or without design or intention, and not as a usual concomitant of the business of the employer. Holmen Creamery Ass'n v. Industrial Commission, 167 Wis. 470, 167 N.W. 808, cited with approval in McFall v. Barton-Mansfield Co., 333 Mo. 110, 61 S.W.2d 911, and March v. Bernardin, 229 Mo.App. 246, 76 S.W.2d 706. The antonyms of *casual* include the terms regular, systematic, periodic and certain. 71 C.J., Workmen's Compensation Acts, § 179, p. 439; 2 Schneider's Workmen's Compensation, 3rd Ed., § 279(a). Tested by these standards the instant employment was casual. Claimant was employed to remove and transport disconnected hot water tanks—a moving or hauling job. It was a contract for drayage or transportation, not a contract for the maintenance, repair or replacement of the tanks. In the operation of an apartment house the occasion for such drayage would be rare. It might never arise. There is no evidence that it had ever happened at any previous time. It is not the kind of thing that normally or usually occurs. On the contrary, such an employment would be abnormal and not the usual concomitant of the business of the employer. Its occurrence or reoccurrence could not be reasonably anticipated as certain. The occasion for the employment was but a fortuity or chance happening. It was wholly unpredictable and sporadic. It was not an employment of a regular or recurrent nature. The fact that there was no regularity in the employment and no ex-

pectation of performance or continuance for any particular length of time casts it in the light of casual and not regular employment. Smith v. Grace, 237 Mo.App. 91, 159 S.W.2d 383; Ray v. Commercial Acid Co., Mo.App., 227 S.W. 851. It was an isolated specialty job requiring special equipment and skills for the performance of which appellant realty company had no regular employees and no trucks or hoisting equipment. The carting off of the tanks was only remotely related to the operation of the business. Nor was it necessary to remove the tanks and transport them elsewhere in order to operate the employer's business. In this respect as well as in the lack of regularity the employment is radically different from the repair of boilers in a coal mine, March v. Bernardin, supra; the application of built-up roofs, McFall v. Barton-Mansfield Co., supra; the repair and maintenance of elevators, Kennedy v. J. D. Carson Co., Mo.App., 149 S.W.2d 424; the painting, Tokask v. General Baking Co., supra, or the repair, McKay v. Delico Meat Products Co., 351 Mo. 876, 174 S.W.2d 149, of buildings, or the laying of a floor in a warehouse building, Norris v. Koenig, Mo.App., 183 S.W.2d 160. In each of the cases cited by respondent in which employments were held not casual the elements of recurrence, regularity, and necessity appear.

Several states have eliminated the casual employment exclusion from their workmen's compensation acts.[1] Our General Assembly, however, after enacting this exclusion more than thirty years ago, has not taken such step. It is not proper for us to whittle the exclusion away to nothing by judicial interpretation. On the contrary we must give it meaning, purpose and effect. Under any and all of the recognized tests we are driven to the conclusion that this was but a casual employment.

Respondent nevertheless argues that if he cannot recover as a regular employee he is entitled to compensation as a "statutory" employee under § 287.040 RSMo 1949, V.A.M.S., which provides that any person who has work done under contract on or about the premises which is an operation of the usual business which he there carries on shall be deemed an employer and shall be liable to provide compensation under the Act to such contractor when injured on or about the premises of the employer while doing work which is in the usual course of his business. In determining whether a particular work is an operation in the usual course of a business the following factors are to be considered: whether the employer was equipped to perform the act with his own tools and appliances and by the use of the regular employees of his staff, Rucker v. Blanke Baer Extract & Preserving Co., Mo.App., 162 S.W.2d 345; Eckmayer v. Newport, Mo.App., 267 S.W.2d 379; whether the act customarily, or ever, was performed by the regular employees of the business, State ex rel. Long-Hall Laundry & Dry Cleaning Co. v. Bland, 354 Mo. 97, 188 S.W.2d 838; Cummings v. Union Quarry & Construction Co., 231 Mo.App. 1224, 87 S.W.2d 1039, and whether the act occurred regularly and recurrently, or only occasionally and unpredictably. Eckmayer v. Newport, supra. Applying these tests to the instant situation it is clear that claimant was not engaged in an operation of the usual business of appellant realty company at the time of his injury, within the meaning of § 287.040, supra. The usual business of appellant realty company was that of owning, operating and maintaining an apartment building for tenants and the supplying of facilities necessarily incidental thereto. It was not engaged in the business of hauling heavy objects, tanks, etc. or drayage. It was not equipped to perform this type of work, which required a motor truck, equipped to hoist and haul 600-pound tanks. The hauling away and storage of water heating tanks is not a job

[1] Larson, Workmen's Compensation Law, § 51.11, p. 759.

which occurs regularly and recurrently but only occasionally and unpredictably. So far as the record shows this was the first and last time that the occasion for such an unusual and special job of drayage arose. It cannot be classified as a recurring operation. Strictly occasional, it has but the slightest connection with or relevance to the operation of an apartment house. The instant employment is more remote from the operation of the usual business of an apartment house than the repair and maintenance cases. The repair and maintenance phase of the operation had ended. The tanks were disconnected. Presumably the new tanks had been installed. Nothing remained but to haul away the old equipment. Such hauling or drayage was a step removed from the disconnecting of the tanks. Drayage was not normally carried on through appellant realty company's employees. The only evidence concerning hauling related to an entirely different type: the regular and recurrent hauling of trash and debris which normally accumulates at an apartment house and the hauling of salvage or waste material. Even the hauling away of paper and debris and salvage, a routine activity, was done by others and not by regular employees of appellant realty company. The specialty job in question was an extraordinary undertaking which, while perhaps incidental, ancillary or auxiliary to the business of appellant realty company, was in no sense part and parcel of its usual business. Claimant was not a statutory employee under § 287.040, supra, and the commission's finding that claimant was engaged in the "regular and usual work" of appellant realty company at the time of his injury is not supported by competent or substantial evidence upon the whole record. See Rucker v. Blanke Baer Extract & Preserving Co., supra; Eckmayer v. Newport, supra; Cummings v. Union Quarry & Construction Co., supra.

■ Respondent further contends that his claim for compensation should be taken as admitted, under Rule 3 of the industrial commission, for the reason that appellants' answer was filed more than 15 days after the date of the filing of the claim for compensation. The rule in question was neither pleaded nor proved at the hearing before the referee. This court does not take judicial notice of the rules of administrative agencies. If such rules are to be relied upon they should be introduced in evidence as any other fact material to the cause in issue. Anderson v. Kraft, Mo.App., 129 S.W.2d 85, certiorari quashed State ex rel. Anderson v. Hostetter, 346 Mo. 249, 140 S.W.2d 21. Consequently, regardless of the merits of the contention, we are in no position to enforce the rule.

Appellants make a final point as to the inadequacy of the evidence to support the commission's finding with reference to claimant's average weekly wages but in view of the fact that claimant is not entitled to any compensation, this question need not be explored.

Accordingly, it is the recommendation of the Commissioner that the judgment of the circuit court be reversed and the cause remanded with directions to the trial court to reverse the award and remand the cause to the commission with directions to enter a new order denying compensation.

PER CURIAM.

The foregoing opinion of HOUSER, C., is adopted as the opinion of the court.

The judgment of the circuit court is, accordingly, reversed and the cause remanded with directions to the trial court to reverse the award and remand the cause to the commission with directions to enter a new order denying compensation.

ANDERSON, P. J., MATTHES, J., and ELMO B. HUNTER, Special Judge, concur.