LOUISE C. NEWMAN, ELIZABETH ANN NEWMAN and ROY WILLIAM NEWMAN v. RICE-STIX DRY GOODS COMPANY and CONSOLIDATED UNDERWRITERS, Appellants.—73 S. W. (2d) 264.

Division Two, June 19, 1934.

*Otto & Potter* and *C. A. Powell* for appellants.

574

*H. T. Williams* and *Bohling & Bohling* for respondents.

576

COOLEY, C.—This case, which comes to the writer on reassignment, originated before the Workmen's Compensation Commission. Plaintiffs are the widow and the two minor children of Roy M. Newman, deceased, who was killed in an automobile collision May 28, 1931. At and prior to the time of his death Newman was in the employ of defendant dry goods company as a traveling salesman, having been so employed for many years. The Consolidated Underwriters was the employer's insurer. Claim was filed before the commission on July 15, 1931. It was first heard by a referee who awarded compensation. The employer and insurer applied for a review by the full commission and the claim was then heard by the commission, which body awarded compensation as follows: "For burial expenses the sum of $150; for death benefits, to Louise C. Newman the sum of $20.00 per week for 461.5 weeks, until prior death or remarriage, and then to Elizabeth Ann Newman and Roy William Newman share and share alike." The employer and insurer appealed to the circuit court which affirmed the award of the com-

mission and from that judgment they have appealed to this court. The amount of the award, aggregating more than $7500, gives this court appellate jurisdiction. Aside from the question of timely notice to the employer of Newman's death the chief controversies presented are whether or not Newman's earnings brought him within the Compensation Act and whether or not the accident which resulted in his death arose out of and in the course of his employment.

Newman's territory extended generally from the Missouri River south to Eldorado Springs, Missouri, between Jefferson City, which it included, and the Kansas state line. He lived with his family at Sedalia in his territory and made his headquarters there. He covered his territory on an average of once a week. Sometimes he traveled by bus or train but more often used an automobile which he owned. He chose his own times of calling upon his customers and the means and routes of travel to reach them. He paid as they were incurred the expenses, such as hotel bills, railroad or bus fare, sample rooms, etc., incident to the performance of his duties when away from Sedalia calling on customers and each week submitted to his employer a statement of such expenses so paid and received from the employer reimbursement thereof. He received no allowance for traveling or hotel expenses nor, except for his salary, for living expenses when at Sedalia. He was paid for his work a salary of $200 a month which the company set aside for him in what it called his drawing account, sometimes referred to as his personal account. Salary payments as drawn by him from time to time were charged against that account. The expenses were shown on the company's books in a separate account called the expense account or trip account. In addition he received at the end of the company's fiscal year, November 30, what the company officials in their testimony called a bonus, if justified by the amount of his sales, which was computed thus: Two and a half per cent of the amount of his sales during the preceding twelve month period was ascertained and if such sum exceeded the amount of his salary and expenses paid by the company he received the difference as a bonus or compensation in addition to his guaranteed salary. If his salary and expense account amounted to more than said two and a half per cent he was not required to account for the difference.

The company held periodical sales at its store in St. Louis. It was the duty of its salesmen, including Newman, to urge their customers to attend those sales and to be present themselves if they had customers in attendance to wait upon such customers and do whatever they could to further the company's business and interests in the salesmen's respective territories, and they customarily did so attend. Mr. Wilson, division sales manager having supervision of Newman's territory, testified that he had authority to require salesmen to attend. One such sale was held during the week beginning Monday, May 25,

1931. Several of Newman's customers were there and he attended the sale, waiting upon them and making a number of sales, until late in the evening of May 27, when he finished with them and notified his sales manager that he would go home the next morning, which was satisfactory to said manager. Newman's wife and children had accompanied him to St. Louis. They left together for Sedalia the next day. Near Tipton, west of Jefferson City, Newman's car was struck by a gravel truck which was traveling on the wrong side of the road and he received injuries from which he died almost immediately.

■ I. It is urged by appellants that the award cannot be sustained because the record does not show that written notice of Newman's death was given to the employer within thirty days after the accident and the commission did not make a finding that there was good cause for failure to give it or that the employer was not prejudiced by failure to receive it. The referee found that the employer had notice but appellants say there was no evidence upon which to base such finding. Respondents argue that the referee's finding is conclusive and further that appellants waived the want of notice, if any. Appellants contend that the giving of such notice, or, if it has not been given, a finding by the commission of statutory grounds excusing the failure, is jurisdictional and cannot be waived. So far as we have been able to find the precise question thus presented has not been decided by this court.

The statute, Section 3336, Revised Statutes 1929 (12 Mo. Stat. Ann., p. 8268), provides:

"No proceedings for compensation under this chapter shall be maintained unless written notice of the time, place and nature of the injury, and the name and address of the person injured, shall have been given to the employer as soon as practicable after the happening thereof but not later than thirty days after the accident, unless the commission shall find that there was good cause for failure to give such notice, or that the employer was not prejudiced by failure to receive such notice. No defect or inaccuracy in such notice shall invalidate the same unless the commission shall find that the employer was in fact misled and prejudiced thereby."

As above stated, the referee found that the employer had notice. The full commission, at the hearing before it, made no specific finding of facts. Its finding is general, merely reciting that the parties had submitted their disagreement or claim to the "undersigned members" of the commission who, "after hearing the parties at issue, their representatives, witnesses and evidence . . . find and award compensation . . .," followed by statement of the amount awarded and the further statement, "affirming on review award dated October 14, 1931" (that of the referee).

In State ex rel. Buttiger v. Haid, 330 Mo. 1030, 51 S. W. (2d) 1008, this court held, quashing the opinion of the St. Louis Court of Appeals in Buttiger v. Ely-Walker Dry Goods Co., 42 S. W. (2d) 982, that while the commission ought to make specific findings of the facts yet if it has made an award without making such specific findings the court will presume that it found the facts absent which it could not have made the award. "The commission could not have made the award without finding that there was a good cause for failure to give the written notice, or that the employer was not prejudiced thereby, or both." [330 Mo. l. c. 1033, 1034, 51 S. W. (2d) l. c. 1009(4).] The court held that there was ample evidence to sustain a finding that the employer was not prejudiced by failure to receive the written notice, which is true also in the instant case, as will hereinafter appear. The question of waiver was not present in that case, as the employer had raised the question of prejudice for failure to receive written notice at the hearing before the commission. [See 42 S. W. (2d) 982, 983, supra.]

In the instant case the claim filed with the commission contained no reference to notice to the employer. The employer and insurer filed an answer before the commission which, omitting the caption, reads: "Employer and insurer deny each and every material allegation set forth in said claim for compensation." At no stage of the proceedings before the referee or the full commission or in the circuit court was there any suggestion of want of notice or of prejudice to the employer for failure to receive same. That point is raised for the first time in appellant's brief in this court. The claim was contested below on other grounds. The evidence as to deceased's employment, the nature of his work, the supervision thereof by the employer, his territory, the amount of his earnings and manner of payment, his duty to attend the sale at St. Louis, and the fact that he did so attend, in short, the evidence relating to the nature of the employment and amount of earnings, the chief bone of contention, was furnished chiefly by the employer's officers who had employed Newman and who had supervision of his work. Prior to the hearing before the referee they had prepared from the books of the company the data from which they testified and that had been done at the request of counsel for the employer and insurer. One of those officers, Mr. Rabe, testified that at the request of employer's and insurer's counsel he looked up the matter of Newman's employment arrangment "after Mr. Newman's death," but he did not say and was not asked how long after. Mrs. Newman gave some testimony relative to her husband's work and salary which did not contradict that of the employer's officers. There is no dispute about the time, place or manner of Newman's death. There is, indeed, no substantial dispute as to the facts upon which the question of liability depends. The disagreement is as to the law applicable to the facts. Obviously the employer could not have been prejudiced

by failure to receive written notice, if in fact such notice was not given.

If the finding and award of the full commission is to be considered independently of the referee's findings, State ex rel. v. Haid, supra, determines adversely to appellants their contention that the award cannot be sustained for want of a finding by the commission excusing written notice and this regardless of the question of waiver. [See, also, McFall v. Barton-Mansfield Co., 333 Mo. 110, 61 S. W. (2d) 911.] But in any event we cannot agree with appellants' learned counsel that this notice to the employer cannot be waived. As we said in McFall v. Barton-Mansfield Co., 333 Mo. 110, 61 S. W. (2d) l. c. 913, 914, the requirement of written notice is a reasonable provision for the benefit of the employer but the giving of such notice is not an unconditioned prerequisite to recovery. The statutory requirement of notice is designed to give the employer timely opportunity to investigate the facts. But if he knows the facts or there is no dispute about them failure to receive the written notice could not prejudice him. The commission is empowered to award compensation though written notice has not been given if it finds there was good cause for not giving it or that the employer was not prejudiced by failure to receive it. In order to determine whether or not the employer was prejudiced by such failure the commission would have to hear evidence on the point. Suppose that at the beginning of the hearing the employer were to say to the referee or to the commission before whom the hearing was held that he made no point relative to want of notice or prejudice because thereof. It is stated in respondents' brief that that is just what happened in this case; that at the hearing before the referee and before the taking of testimony began the referee asked specifically about notice and counsel for the employer and insurer "agreed no point would be made on notice," a statement not denied in appellants' reply brief. Without treating such statement in the brief as a fact, because it is not shown in the record before us, it is illustrative of what could happen. If a fact, it may account for the referee's finding that the employer had notice. We find in the record no evidence to support that finding unless such alleged fact can be inferred from the fact that the employer's officers at its request made up from its records the data from which they testified and that fact is rather too indefinite to justify an inference of timely written notice. Nor can we agree with respondents that the referee's finding if not supported by any substantial evidence is nevertheless conclusive on appeal. But if such situation should arise, as it might, must the referee or the commission hearing the case take testimony on such question about which no issue is made? We think not. A question of this kind should be first raised where, if possible, it can be met by evidence that notice was given or that failure to give it was excusable or did not prejudice the employer, so that the issue, if there be any dispute about

it, may be determined by the tribunal charged by statute with the duty of determining it. If the employer, in words or by his conduct and the manner in which he proceeds before such tribunal, there indicates that there is no such disputed issue in the case he should not be permitted to raise the question for the first time on appeal after the entire original record is made up. [See American Mill Co. v. Industrial Board, 279 Ill. 560, 117 N. E. 147; Storrs v. Industrial Board, 285 Ill. 595, 121 N. E. 267.] In American Car & Foundry Co. v. Industrial Commission (Ill.), 167 N. E. 80, 83, the Illinois Supreme Court said that the making of a claim for compensation within six months after injury or death is jurisdictional and the failure to make such claim is not waived by failure to make objection on the hearing before the arbitrator, before the Industrial Commission or in the circuit court; a holding that accords with our holding in Higgins v. Heine Boiler Co., 328 Mo. 493, 41 S. W. (2d) 565. But we do not understand the American Car & Foundry Company case to overrule prior decisions of the same court holding that failure to give notice of the injury or death to the employer may be waived. That question is not considered in the American Car & Foundry Company case.

In Wall v. Lemons, 51 S. W. (2d) 195, 199 (6), the Kansas City Court of Appeals said that notice was waived when no point was made for want of it before the commission, citing Hartwell Motor Co. v. Hickerson, 160 Tenn. 513, 26 S. W. (2d) 153, 155. Appellants argue that said statement of the Court of Appeals is *obiter dictum* and that the holding of the Tennessee court is not authority for it because based on a differently worded statute. The Tennessee statute, Public Acts 1919, Chapter 123, Section 22, provides that notice shall be given the employer immediately upon the occurrence of an injury or as soon thereafter as reasonable or practicable, "and no compensation shall be payable under the provisions of this act unless such written notice is given the employer within thirty days after the occurrence of the accident, unless reasonable excuse for failure to give such notice is made to the satisfaction of the tribunal to which the claim for compensation may be presented."

In the Hartwell Motor Company case the court discussed the question of waiver at length and held that the provision of the statute requiring notice to the employer was for the benefit of the employer and that it can be waived, "just as like provisions in a policy of insurance can be waived." Our statutory provision relative to notice has the same purpose and we cannot see that the different wording of our statute makes any difference as to the effect thereof on the question of whether the notice can be waived. See, also, Vassar v. Swift & Co., 106 Kan. 836, 840, 189 Pac. 943, holding that failure to give notice to the employer might be waived and could not be raised for the first time in the appellate court. While there seems to be some diversity of judicial opinion on the subject we think the weight

of authority is that a provision in workmen's compensation acts for timely notice to the employer of an accident or injury, such as contained in our statute, may be waived by the employer for whose benefit it was enacted and we think such holding in accordance with reason and justice. See for collection of authorities note to Walsh v. Waldron & Son, 78 A. L. R. 1301, beginning at page 1306.

Appellants cite Higgins v. Heine Boiler Co., supra. That case deals with failure to file claim for compensation within six months after the injury or death, or if payments have been made on account of the injury or death then within six months from date of the last payment, as required by Section 3337, Revised Statutes 1929 (12 Mo. Stat. Ann., p. 8269), and holds said section mandatory, as in terms it is. The commission is given no authority to excuse noncompliance therewith. That requirement of Section 3337 is held in the Higgins case to enter into and to constitute an essential part of the right to compensation conferred by the compensation statute. The reasons for such holding are set forth at length but in our opinion they do not apply to the provision for notice to the employer provided for in Section 3336. We do not regard the Higgins case as authority for the contention that the notice provided for by Section 3336 cannot be waived. So of Wheeler v. Mo. Pac. Railroad Co., 328 Mo. 888, 42, S. W. (2d) 579, which deals with Section 3337 and in which there was no discussion of the question of waiver.

In Schrabauer v. Schneider Engraving Product, 224 Mo. App. 304, 25 S. W. (2d) 529 (overruled on another point in Wheeler v. Mo. Pac. Railroad Co., supra), the court speaks of the requirement of Section 3336, supra, as jurisdictional and therefore, theoretically, not subject to be affected by express consent or waived by acts of estoppel. In that case the commission had made no finding relative to the notice called for by said section. It appeared from the evidence, however, that while the employer had not received written notice it had actual knowledge of the claimant's injury and had not been prejudiced by failure to receive written notice and had not urged want of notice or prejudice on account thereof before the commission. Notwithstanding that the commission had made no specific finding relative to notice or lack of prejudice for want thereof the court affirmed the commission's award in favor of the claimants.

In Buttiger v. Ely & Walker Dry Goods Co., supra, the question of prejudice for want of notice was raised before the commission so there was no question of waiver involved. The commission, however, did not make a specific finding that there was good cause for not giving notice or that the employer was not prejudiced by want of notice. The court spoke of the requirement of notice as jurisdictional and reversed the judgment of the circuit court affirming the commission's award to the claimant for lack of such finding. As stated above, the opinion was quashed by this court on certiorari.

The provisions of the Workmen's Compensation Act are to be liberally construed and the awards of the commission "shall not be declared inoperative, illegal or void for any omission of a technical nature in respect thereto." See State ex rel. Buttiger v. Haid, supra, wherein it is held that the failure of the commission to make a specific finding that the employer had not been prejudiced by failure to receive written notice where the evidence clearly showed such fact and no complaint was made that the employer had been prejudiced was a technical omission which in that case could not affect the merits of the case. In our opinion the provision of Section 3336, supra, for notice to the employer is not jurisdictional in the sense that it cannot be waived. We think the employer can waive it and that he did so in this case and cannot now raise the question for the first time on appeal to this court.

■ II. Appellants contend that Newman's earnings exceeded $3600 a year and therefore he was not an employee within the provisions of the Compensation Act. The statute, Section 3305, Revised Statutes 1929 (12 Mo. Stat. Ann., p. 8238), provides that the term "employee" shall not include any person whose "average annual earnings" exceed $3600. That section does not define earnings. Section 3320 prescribes the basis for computing compensation. The pertinent portions of that section are paragraphs (a) and (g) which read as follows:

"(a) The compensation shall be computed on the basis of the annual earnings which the injured person received as salary, wages, or earnings if in the employment of the same employer continuously during the year next preceding the injury. . . .

"(g) In computing the annual earnings there shall be included in the reasonable value of board, rent, housing, lodging and fuel received from the employer as a part of the remuneration of the employee and which can be estimated in money, and the value of gratuities customarily received by consent of the employer, in the usual course of business from persons other than the employer, but there shall not be included the wages of helpers or any sums which the employer paid to the employee to cover any special expenses entailed on him by the nature of the employment."

Appellants argue that the expenses incurred by Newman when calling on customers away from Sedalia, which were reimbursed him by the employer, are to be considered as part of his earnings. Respondents say those expenses were special expenses entailed by the nature of deceased's employment and under paragraph (g) are not to be included. If appellants are right, Newman's earnings exceeded $3,600 a year; otherwise they did not. The "bonus" referred to in our statement plus his salary of $200 a month did not equal $3,600. In Wahling v. Krenning-Schlapp Grocer Co., 325 Mo. 677, 29 S. W. (2d) 128, expenses of the kind here in question incurred by a sales-

man were not treated as part of his earnings in computing his compensation. The death benefits allowed his dependents were computed upon the basis of his net earnings. But, as suggested by appellants, the question of whether or not such expenses should be included as earnings was not raised and was not considered by the court.

In our opinion, on the facts of this case, the expenses above referred to are not to be included as part of Newman's earnings within the purview of our statute. Paragraph (a) of Section 3320 provides that compensation is to be computed on the basis of "earnings which the injured person received as *salary, wages or earnings.*" (Italics ours.) Evidently the term "earnings" following "salary, wages," is used as meaning earnings of the same nature as those particularly specified, viz., salary or wages; that is, remuneration to the employee for his services. Paragraph (g) provides that the value of "board, rent, housing, lodging and fuel received from the employer as a part of the remuneration of the employee" is to be included as earnings. Those are ordinary or general living expenses which every person, whether employed or not, necessarily incurs. They cannot be said to be entailed on any employee by the nature of his employment. The statute expressly provides that there shall not be included "the wages of helpers or any sums which the employer paid to the employee to cover any special expenses entailed on him by the nature of the employment." Sums so paid to or for an employee do not go to the support of him or his dependents. The term "special expenses," is not defined in the statute. It is argued by appellants that while postage, the cost of procuring sample rooms and the like might be considered special expenses, most of the items of expense here involved, such as traveling and hotel expenses, are customarily incurred by all traveling salesmen and therefore are not special expenses within the intendment of the statute. But no doubt all such salesmen would customarily expend money for postage in sending in their orders and reports and in procuring the use of sample rooms, as well as for traveling expenses and hotel bills. If a sales manager working for a stipulated salary, with headquarters in the employer's office, were required by the nature of his duties to make trips over the territory under his supervision and the employer paid the expenses of those trips would such expenses be reckoned as part of such manager's earnings under the statute? We think not. We think the term "special expenses" used in the latter part of paragraph (g) was used by the Legislature in contradistinction to the board, rent, etc., referred to in the first part of the paragraph rather than as being limited to some particular items of expense that might be incurred by one and not by others employed in the same line of work or that would not usually be incurred by one engaged in that kind of work. For further discussion of this question see Russell v. Ely & Walker Dry Goods Co., 332 Mo. 645, 60 S. W. (2d) 44, wherein we

held on similar facts that expenses of the kind in question do not constitute part of the employee's earnings within the meaning of the statute.

█ The contract between the parties must of course be considered. Appellants argue, as we understand them, that the real basis of Newman's compensation was two and a half per cent of the amount of his sales, he to pay his own expenses. They cite Springfield Coal Mining Co. v. Industrial Commission (Ill.), 126 N. E. 133. In that case the employee was employed to mine coal and by contract was to be paid therefor a stipulated price per ton of coal mined by him. He was required to furnish his tools and equipment and his powder and other supplies. By agreement with the employer the latter furnished, in effect sold, to the employee certain of such articles which it was the employee's contract duty to provide, and advanced for him certain dues which he owed to his union, which also were his personal obligations, and deducted the agreed price of the materials and the dues so paid from the employee's pay check. The court held that such sums were not to be deducted from the employee's earnings in computing the amount of his earnings under the Compensation Act. The court said, 126 N. E. 1. c. 135:

"They (the miners) receive so much a ton for mining coal. Their wages are not increased or diminished or in any way affected by the fact that they buy the articles aforesaid from plaintiff in error instead of buying them from an outsider."

That case and the English cases therein referred to, one of which is cited by appellants, are distinguishable on the facts from the case before us. In the instant case there was a different contract arrangement between the parties. Newman was to receive for himself a definite salary of $200 a month. His actual expenses incurred in performance of his duties while away from Sedalia were to be reimbursed to him and if two and a half per cent of the amount of his sales during the fiscal year exceeded the sum of his salary and the expenses paid by the employer he was to receive as a bonus the difference between such aggregate of salary and expenses and said two and a half per cent. The two and a half per cent "commission," as appellants term it, was used as a basis by which to determine the amount, if any, of the bonus to which he was entitled. Of course the bonus, if any, was part of his earnings. But note, that if the sum of salary and expenses *exceeded* two and a half per cent of the amount of his sales he was not charged with the difference. It cannot be said therefore that his contract was for the payment to him of a certain commission on the amount of his sales, out of which he was obligated to furnish his own equipment and pay his own expenses. We think this interpretation of the contract, the terms of which are undisputed, and of the term "earnings" as used in the statute, comports with the spirit and purpose of the legislative act.

 III. It is contended that the accident which caused Newman's death did not arise out of and in the course of his employment because at the time he was not following the "logical" route of travel between St. Louis and Sedalia. He was traveling on U. S. Highway No. 50. There are two State Highways leading westward across the State from St. Louis, U. S. Highway No. 40 and U. S. Highway No. 50. Both go from St. Louis to Kansas City. No. 40 does not pass through Sedalia. No 50 does and from Jefferson City to Sedalia is in what was then Newman's territory. He had customers at several small towns on that highway between Jefferson City and Sedalia. One witness, Mr. Rosenthal, testified that in going from St. Louis to Sedalia he traveled highway "forty and fifty-six into Sedalia." "That is the direct route when you make time." He thought it a shorter route than No. 50, though he had never traveled No. 50. [He evidently meant 40 and 65 instead of 40 and 56. The road map in evidence shows no highway numbered 56.] No. 40 and 65 were paved. Part of No. 50 was paved, part surfaced with gravel. There were a few detours, "not bad," where, presumably, construction or repair work was in progress.

Mrs. Newman testified that her husband and she, in attending the sales at St. Louis and returning therefrom, had traveled both routes, No. 50 and No. 40; that there was very little difference in distance; that she understood the distance was a little less by No. 50; that on this occasion her husband had his catalogue and some samples with him and she understood he intended to stop and call on a customer at California on Highway 50 west of Jefferson City but did not do so because it was getting late in the evening when they reached that place. At another time, on cross-examination, she said in answer to a question as to why they had traveled by No. 50 on this occasion: "Just for a different route home. It made no difference." From a map introduced by appellants it appears there is but little if any difference in distance between the two routes mentioned. The foregoing was in substance the testimony relative to the two routes.

It is clearly shown in the record and is undisputed that Newman was acting in the line of his duty in attending the sale at St. Louis and that at the time of the accident he was returning therefrom to his home and headquarters at Sedalia, there to resume his work. In Teague v. Laclede-Christy Clay Products Co., 331 Mo. 147, 52 S. W. (2d) 880, it was held that where a salesman who had gone to a certain place in the course of his duty to his employer was killed while returning from such place, the accident which caused his death arose out of and in the course of his employment. Appellants do not seem to dispute the principle but they say that Newman deviated from the "logical" route. They say that when a salesman "*slightly* deviates from the logical course of travel and an accident occurs, it arises out of and in the course of his employment," but that in this case the deviation was too great. This argument rests and must

rest upon the testimony which we have summarized above. Only one witness testified that the route which appellants say was the "logical" one was shorter or more direct than the one Newman traveled and he had never traveled No. 50. There is nothing in the record to show that Highway No. 50 was not in general use and in reasonably good condition. The evidence justified a finding that it was as direct a route as the one appellants say Newman should have taken. It lay through his territory and he had customers thereon whom he may have intended to call upon on his return journey. Whether he so intended or not we are by no means persuaded that this court, on appeal, would be justified in saying, as a matter of law, that under the circumstances shown such route was a deviation "from the logical course of travel." The commission did not find that the route via Highway 40 and 65 was the "logical" route. The referee found that the accident arose out of and in the course of Newman's employment which means he found against appellants on this contention. The general finding of the full commission either affirmed that finding or implied a similar finding, State ex rel. Buttiger v. Haid, supra, a finding which on this point is clearly sustained by substantial evidence. The point is ruled against appellants.

IV. Finally it is contended that Newman was an independent contractor and that the compensation act does not apply in this cause because the injury did not occur on or about the principal's premises. In addition to the facts we have hereinabove stated it may be added that Mr. Rabe, the employer's general sales manager, testified that he "supervised" all the salesmen; that Newman could have quit working for the company at any time or could have been discharged at any time. Mr. Wilson, division sales manager for that part of Missouri in which Newman's territory lay, testified that he "supervised" the salesmen in his division; that on the occasion of the sale in May, 1931, Newman had intended going home on May 27, and he, Wilson, asked him to stay another day as one of Newman's customers from Sedalia was not through buying and Newman did so. Without further detailing the facts enough has been stated to show that the case is analogous on this point to Wahlig v. Krenning-Schlapp Grocer Co., supra. In that case as in this the salesman was killed while in line of his employment but not on or about the premises of the employer. We held that the injury arose out of and in the course of his employment. The evidence in the instant case fully justified the commission's finding to that effect herein. [See, also, Teague v. Laclede-Christy Clay Products Co., supra; Leilich v. Chevrolet Motor Co., 328 Mo. 112, 40 S. W. (2d) 601.]

588

The judgment of the circuit court affirming the award of the Workmen's Compensation Commission is correct and it is affirmed. *Westhues* and *Fitzsimmons, CC.,* concur.

PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the court. All the judges concur.