Frank Joseph HUGELMAN, III, Respondent,

v.

**BELTONE KANSAS CITY HEARING SERVICE COMPANY, Inc., and Globe Indemnity Company, Appellants.**

No. 24092.

Kansas City Court of Appeals.

Missouri.

Feb. 1, 1965.

Motion for Rehearing or Transfer to Supreme Court Denied April 5, 1965.

Application to Transfer Denied May 10, 1965.

---

Harold J. Maddox, Alder & Morrison, Kansas City, for appellants.

James S. Formby, William G. Flora, Kansas City, for respondent.

BROADDUS, Special Commissioner.

This is an appeal from the judgment of the circuit court affirming an award of the Industrial Commission in the amount of $12,000 in a proceeding under the Workmen's Compensation Law. Claimant-respondent is Frank Joseph Hugelman, III.

It was admitted that appellant Kansas City Hearing Service, Inc., d/b/a Beltone Hearing Service was operating under and subject to the provisions of the Workmen's Compensation Law and that its liability under said law was fully insured by Globe Indemnity Company, and that Frank Joseph Hugelman was involved in an automobile accident on October 30, 1957, at about 10:30 p. m. near Warrensburg, Missouri, and that he was killed instantly.

Leonard G. Gidley was the President-Chairman of the Board of Directors and Manager of the Kansas City Hearing Service, Inc., d/b/a Beltone Kansas City Hearing Service. This was a closely held Missouri corporation and for all practical purposes was owned and managed by Gidley, the principal stockholder.

In July, 1957, Hugelman answered an advertisement placed in The Sedalia Democrat by the employer. This led to a meeting between Gidley and Hugelman and an agreement was entered into by them, wherein Gidley was acting on behalf of the employer. The agreement was oral and by its terms Hugelman was to sell and service Beltone Hearing aid devices in what Gidley and the employer called their Sedalia territory. This was a carefully defined territory consisting of several counties in Missouri in which the City of Sedalia was centrally located.

Hugelman worked out of his home in Sedalia. The employer furnished Hugelman with a sample case containing one each of the then current models of hearing aids and an audiometer. Hugelman was required to sign a form agreeing upon demand to return the aforesaid items to Beltone or in lieu thereof, their value in money. The primary purpose of the hearing aid devices furnished the employee was for demonstration purposes in selling hearing aids. The audiometer was not a Beltone product and was to be used by the employee in testing the degree and kind of hearing aid of potential purchasers of Beltone hearing aid services in the territory assigned to him. The employer also furnished the employee with materials for making ear impressions for purchasers, so that ear models, used in the hearing aid devices could be custom made to fit the individual physical characteristics of the purchaser. The employee was not required to sign for or pay for the ear impression materials. They would be used up in selling hearing aids and would be replaced as needed by the employer, without charge. Ear impression materials are necessary in the proper fitting of the ear moulds. The sale and fitting of Beltone hearing aids required careful and skilled measurements of hearing deficiencies and careful measurements of the physical characteristics of the customer. The employer also furnished the employee with purchase agreement forms.

Mr. Hugelman had not had any prior experience in the sale and fitting of hearing aid devices. He received this training through the employer's sales manager, Mr. Harry Brenner.

The employer and its sales manager planned and advertised a hearing aid clinic to be held in Sedalia on November 1st and 2nd, 1957. In the advertisement reference was made to Beltone of Sedalia, by the employer. Mr. Hugelman's picture was published along with that of Mr. Brenner, who was advertised to the public as a "Beltone factory trained hearing aid specialist" and Mr. Hugelman was advertised to the public to be "Beltone representative, located in Sedalia, to provide the best in hearing help and service to the many Beltone customers."

Under the terms of employment Hugelman was paid a straight commission on his sales and was given a drawing account against commissions in the amount of $150 on the 15th day of each month and $150 on the 30th day of each month. The employer admitted that the working arrangement between the employer and employee could be terminated by either party at any time, with or without cause. The employer also admitted that it could refuse to accept orders written by Hugelman and could demand the return of his sample case and the hearing aid devices and materials furnished him for demonstration purposes.

In the great majority of the sales made by Mr. Hugelman measurements as to hearing deficiency and physical characteristics were made and the ear impressions were either brought or mailed to Kansas City and the order filled from the Kansas City office and mailed to Hugelman for delivery. Hugelman was requested by the employer to do minor service on hearing aids within his territory whether he had sold the hearing aid or not.

On October 30, 1957, Mr. Hugelman left his home in Sedalia about 8:00 a. m. He took with him his sample case, demonstration samples of Beltone hearing aids and equipment. He had previously talked with a Mr. Akins, a garage owner, in Kansas City, about purchasing an automobile for him. When Hugelman left his home he told his wife he intended to go to Orrick, Missouri, to make an ear impression and then go to the Kansas City office and leave the ear impression; that while he was in Kansas City he would purchase an automobile, and that he would be late in returning to their home in Sedalia that evening. Hugelman made a sale that morning in Orrick to a Mrs. Bessie Wilson. He arrived at Mr. Akins' place of business at about 1:00 or 1:30 p. m. Mr. Akins told him that he could not find a used car that he would recommend and advised him to buy a new car. They called the Rudy Fick Ford Company, and ordered a new Ford; asked that it be serviced and they would pick it up later. Hugelman asked Akins if he would take him to the office of the Kansas City Hearing Service, as he had to go there. Akins observed him take some materials from his old car. Akins drove him to the office of the Kansas City Hearing Service. When Hugelman went into the office he was carrying a small box. When he came out of the office he did not have the box. This was a small box, similar to what the evidence showed the hearing aid impressions for the making of ear moulds were carried in. While in the office Hugelman had a discussion with a Miss Noland, who was an office employee of the Kansas City Hearing Service. She testified that she had to write something of a business nature up for him while he was in the office, but she did not recall the exact nature of the work she was doing for him.

After Hugelman had completed his business at the office of the Kansas City Hearing Service he went to the Rudy Fick Agency and got the new automobile. Akins and Hugelman then went to the Cross Roads Restaurant at the corner of Swope Parkway and U. S. Highway No. 50, where they ate their dinner. They left the Cross Roads at about 9:00 p. m. and Akins last saw Hugelman driving eastwardly on Highway No. 50 toward Sedalia in his new automobile. Hugelman was involved in an automobile collision on Highway 50 a

short distance east of Warrensburg at 10:20 or 10:30 p. m.

Mr. Hugelman married Dorothy Anson, now Mrs. Dorothy Daugherty, on June 27, 1953. They lived together continuously from that date, as husband and wife, until Hugelman's death on October 30, 1957. On December 22, 1953, the claimant-respondent, Frank Joseph Hugelman, III, was born of that marriage. Claimant lived with his father and mother at their home continuously from the time of his birth until the date of his father's death. Claimant is still living with his mother.

Appellants first contend that the Commission did not have jurisdiction because Mrs. Daugherty, widow of the deceased, filed a claim for compensation and then wrote a letter advising the Commission that she did not wish to file a claim for compensation against Beltone. Appellants argue that because of these acts Mrs. Hugelman appropriated the entire cause of action for death benefits under the Workmen's Compensation Law to the exclusion of the claimant herein.

■ No guardian had ever been appointed for the minor claimant herein prior to the hearing on this claim and he was a total dependent of the deceased under the law. V.A.M.S.1959, Sec. 287.240(4) (6). Under the authority of Sec. 287.430 V.A. M.S. and the case law of Missouri the Statute of Limitations was tolled as to claimant. Allen v. St. Louis & S. F. Ry. Co., 338 Mo. 395, 90 S.W.2d 1050. There was no appropriation of the claim and subsequent voluntary dismissal without more does in no sense constitute an appropriation under either the general law or under the Workmen's Compensation Law. The dismissal was without prejudice, and there was no determination of any rights or issues.

Appellants next contend that the Commission's award was erroneous because the deceased was an independent contractor and not an employee of Beltone.

■ The law is well settled that our review of decisions made by the Industrial Commission on questions of fact is limited to a determination of whether its findings are supported by " 'competent and substantial evidence upon the whole record.' " We have no authority to set aside its decisions unless they are "clearly contrary to the overwhelming weight of the evidence." Pratt v. Reed & Brown Hauling Co., 361 S.W.2d 57, Mo.App.

In arriving at its holding that deceased was an employee and not an independent contractor the Commission specifically found that there was no contract for the performance of a particular specific job in a definite time; that Hugelman did receive a monthly advance or drawing account from Beltone; that forms were supplied by the Company for Hugelman to fill out and that he did fill them out and send them back to the Company; that Hugelman was provided order blanks, sample machinery and other equipment without which his sales functions could not be performed; that the equipment was not purchased by the salesman; that the Company controlled the prices at which his sales were made; that the Company could refuse to accept his orders or contracts of sale; that the Company restricted Hugelman to a certain sales territory; that it advertised Hugelman as a representative of Beltone; that the Company required him to sign an agreement, creating responsibility for the equipment and to hold money received by him in trust for Beltone; that the Company required certain measurements to be taken in fitting hearing aids; that Hugelman was not allowed to open an office under his own name to sell Beltone products; that it was the policy of the Company to request salesmen to make service calls without compensation from Beltone; that the salesman was acting on behalf of Beltone as part of its regular business operations; that the nature of the work required the personal attention and skill of the salesman and no assistants were hired; that Hugelman was not em-

ployed for a specific period and he could be separated from Kansas City Beltone operations at any time by that Company.

Under the findings above set forth by the Commission there was little more that the employer could have done in controlling the details of the work. In determining whether a person rendering a service for another is an employee or an independent contractor, the ultimate and decisive test is the right of control. Pratt v. Reed & Brown Hauling Co., supra; Maltz v. Jackoway-Katz Cap Co., 336 Mo. 1000, 82 S.W.2d 909.

We agree with the view taken by the Circuit Court after reviewing this transcript that: "Throughout the entire sales transaction from the beginning to the end there was this thread of control running from Beltone to Mr. Hugelman. To be realistic, Mr. Hugelman was nothing more than an ordinary salesman of a particular product of a particular company."

The case which, on its facts, is very similar to the instant case is that of Maltz v. Jackoway-Katz Cap Co., supra. Following the Supreme Court's holding in that case compels us to rule the contention against appellants. The case of Hackler v. Swisher Mower & Machine Co., 284 S.W. 2d 55, Mo.App., relied upon by appellants, is clearly distinguishable from the instant case on its facts.

As to appellants' third point that the Respondent failed to prove that the deceased was injured in an automobile accident and that said injuries caused his death, the Commission found that Mr. Hugelman was so injured and died as a result thereof. The findings are supported by substantial evidence and the point is without merit.

Appellants next contend that the death did not arise out of and in the course of the employment. The evidence shows that Mr. Hugelman left home on October 30, 1957, with his equipment to make an ear impression of a prospective customer who lived at Orrick. He went from there to Kansas City to see about purchasing a new or used car and stopped at the Beltone office and left a little box which it can reasonably be assumed contained the ear impression of the Orrick customer. He did purchase a new car while in Kansas City and he and the car salesman stopped at the Cross Roads Restaurant and ate. Subsequently he left the restaurant driving eastwardly on U. S. Highway 50 towards Sedalia, the home he had left on the morning of the same day. En route at a point on U. S. Highway 50, just east of Warrensburg, he met his death in an automobile accident.

It was necessary for Mr. Hugelman to travel in an automobile to properly discharge his duties as a hearing aid salesman. A good serviceable automobile was essential by reason of the very nature of the business and was for the mutual benefit of Beltone and the deceased. The evidence shows that he was in need of another car. He was returning home by an established route. This was true from either having contacted the customer, or from having contacted the office of his employer, or both. The accident, with the resulting injuries and death, occurred within the period of his employment and was at a place he could have reasonably been expected to be while fulfilling the duties of his employment. In our opinion, the Commission's finding is fully supported by the evidence, and is in accord with the rulings by our Supreme Court in the cases of Spradling v. International Shoe Co., 364 Mo. 938, 270 S.W.2d 28; Newman v. Rice-Stix Dry Goods Co., 335 Mo. 572, 73 S.W.2d 264, 94 A.L.R. 751, and Teague v. Laclede-Christy Clay Products Co., 331 Mo. 147, 52 S.W.2d 880.

Appellants final contention is that the dependent failed to prove and establish the amount of death benefits to which he

claims he is entitled. The Commission found the claimant to be a minor, totally dependent upon the deceased. This finding is clearly supported by the evidence. It made a separate finding entitling the claimant to compensation for 320 weeks at the rate of $37.50 per week, or a total of $12,000. It is clear that these findings relative to the amount of the award are supported by sufficient competent evidence and that the Commission used the correct legal formula in its computation. See Sec. 287.240 (2) and (4) and Sec. 287.250(4) V.A.M.S.

The judgment should be affirmed. The Special Commissioner so recommends.

The foregoing opinion of BROADDUS, Special Commissioner, is adopted as the opinion of the Court and the judgment is hereby affirmed.

All concur.