Arthur KLOPSTEIN, Employee-Appellant,

v.

SCHROLL HOUSE MOVING CO., Employer, and Bituminous Casualty Corp., Insurer, Respondents.

No. 32891.

St. Louis Court of Appeals.

Missouri.

Feb. 20, 1968.

Harry J. Nichols, St. Louis, for employee-appellant.

Graff & Lahey, Malcolm I. Frank, St. Louis, for respondents.

DOERNER, Commissioner.

In this proceeding under the Workmen's Compensation Law claimant Arthur Klopstein filed a claim on April 15, 1964, wherein he alleged that, "On or about Sept. 4, 1963" he " * * * fell off a rack of timbers onto the floor causing, aggravating and/or exascerbating" his "Lumbar sacral spine and associated nerves." The employer and insurer answered, denying that the claimant had sustained an accident and also pleaded that the claimant had failed to give a notice to his employer of any accident or injury within the time prescribed by law. After a hearing the referee entered the following award:

"I find from all of the evidence that Arthur Klopstein, employee herein, sustained an accident on September 4, 1963, arising out of and in the course of his employment with the Schroll House Moving Company.

"I further find that the employee failed to give the employer notice of his injury as required by Section 287.420 Revised Statutes of Missouri, 1959.

"Compensation, therefore, is hereby denied."

Neither side found that award entirely to its liking and both sought a review by the Industrial Commission, the claimant from that portion concerning the failure to give notice and the denial of compensation and the employer and insurer from the finding that the employee had sustained an accident arising out of and in the course of his employment. In its final award the Industrial Commission adopted the referee's findings of fact, his rulings and conclusions of law, and his decision, and denied compensation. On appeal by the claimant the Circuit Court of St. Louis County affirmed the final award, and he now seeks our review.

The evidence shows that for about one and a half years prior to September, 1963, the claimant, nineteen years of age at that time, had worked for the employer, who was engaged in the business of moving houses. Claimant testified that while he was classified as a carpenter he actually performed mostly manual labor. He related that, "About the first part of the month" of September, 1963 (he could not give a specific date), while standing on a pile of timbers in the employer's storage yard, looking for a particular one to load on a truck, his right foot went through a space between two timbers, causing him to fall to the ground. He immediately experienced what he described as "moderate" pain in his right arm, hip and back. Claimant stated that he had never had pain in his back before, and knew he was injured from the moment he got up. He admitted that he never told his foreman about the accident the day he fell or at any later time. Claimant said that he continued to work on the day he fell, and thereafter, although the pain became increasingly worse, and that he consulted his family physician, Dr. B. Todd Forsyth, on October 19, 1963. According to Dr. Forsyth, claimant was then complaining of a stiff neck, and of pain in his back which had developed about the first of September, but gave no history of an accident or fall.

Claimant continued under the care of Dr. Forsyth and was hospitalized in March, 1964, for treatment for what the doctor diagnosed as a herniated intervertebral disc between the fifth lumbar and first sacral vertebrae. He continued to work until Friday, November 1, 1963, when he quit because Dr. Forsyth told him to stop as the heavy lifting was aggravating his condition. On Sunday, November 3, 1963 claimant telephoned Jess W. Schroll, his employer, and told him he had been to the doctor, had a ruptured disc, and would have to get lighter employment. Schroll asked claimant whether he had been hurt on the job, and claimant answered no, that he couldn't recall having been hurt; and that he didn't know what caused his injury. Schroll suggested claimant come by the next evening, and claimant did so. On that visit claimant told Schroll he had awakened from a dream one night with his back hurting him, that he had gone to the doctor a couple of times, and that the doctor finally said he thought it was a ruptured disc and claimant should get some other kind of job. Schroll asked claimant how he was going to take care of his doctor bills, and when claimant said he would make out, Schroll told claimant there were two ways in which he could help him; that if he was hurt on the job he should apply for workmen's compensation, and if he wasn't hurt on the job he should apply for welfare from the Carpenter's Welfare Fund. After Schroll's conversation with claimant on November 4, 1963, Schroll called the insurer, reported that claimant had an injury, and was instructed to make out a report. Schroll made one out on the Workmen's Compensation Division Form 1, "Report of Injury." To the printed question, "Is injury under the Law?" he answered, "Yes," but in response to the question of how the injury occurred he wrote: "Arthur does not claim injury specifically. He first notified us on Nov. 4, 1963 that his back was bothering him and he had consulted a doctor who suggested that he quit work for a while." While this report was dated November 19, 1963 and sent to the insurer at that time, it was not filed with the Division until March 19, 1964.

About a week or two after November 4, 1963 claimant called Schroll on the telephone and during the conversation Schroll suggested that claimant go to Dr. M. A. Diehr for an examination to be sure he had a ruptured disc. Schroll told claimant that he would pay for the examination. Schroll made the suggestion and personally paid for the examination because he considered claimant as a friend and a young man; and because he wanted to find out what was wrong with him as he had a boy about claimant's age. During the conversation claimant made no mention of having

been injured on the job. Claimant did go to Dr. Diehr for an examination on December 6, 1963. The doctor testified that claimant gave a history of his back beginning to ache about the first of September, but said claimant did not remember injuring his back. After examining claimant and the x-rays which had been taken for Dr. Forsyth, and which claimant brought with him, Dr. Diehr told claimant he could not make a definite diagnosis without a further examination, including a myelogram.

On November 29, 1963, claimant filed a claim for benefits with the Carpenter's Health and Welfare Fund, which is supported by contributions made by employers at the rate of 10¢ an hour worked by each carpenter they employ. In the written application claimant gave the following answers to the questions on the form: Q. "When did accident happen or sickness begin. A. Unable to name exact time 1963. Q. Describe injuries received or nature of sickness. A. Ruptured disc. Q. If an accident, where and how did it happen? A. time unknown. Q. Was disability due to occupational accident or occupational sickness? A. Unknown." The purpose of the Fund is to provide benefits to members of the carpenter's union for illness or injuries not connected with accidents while at work. Claimant was paid $25 per week by the Fund for the period from November 4, 1963 to March 29, 1964.

The files of the St. Louis office of the Division of Workmen's Compensation showed that claimant consulted Referee Thomas L. Sullivan for free legal aid on December 3, 1963. The notation made on the Division's form prepared by Sullivan (who had died prior to the hearing) reads:

"Loading truck, foot slipped between too (sic) timbers and fell, followed by back pain. No disability at that time. Consulted own doctor. Notified boss of condition on 11/1/63. Employee advised of rights. Set for conference as soon as possible."

On December 17, 1963 claimant was interviewed by someone representing Bituminous Casualty Corporation, Schroll's compensation insurer, and gave him a written statement, which was introduced by claimant. In it claimant stated that he had fallen off of the timbers and to the ground about the first week in September, 1963, while looking for a particular timber, causing pain in his right arm and hip, and in the lower part of his back.

On direct examination by his counsel claimant was asked: "You yourself have never told Mr. Schroll about having fallen out there at work, have you?" to which he answered, "No, sir." Schroll, who was called as a witness by claimant, testified on cross-examination:

"Q (BY MR. LAHEY) Up to the present time has Arthur Klopstein ever said anything to you about having fallen while at work and being injured?

"A No.

"Q What was the first knowledge you had that this man was claiming that he was injured at work?

"A First I got a letter from the Workmen's Compensation Commission that he applied for Workmen's Compensation."

Schroll was not asked and the evidence does not show when he received the letter from the Commission, and we cannot be certain whether it was received after claimant consulted Referee Sullivan for free legal aid on December 3, 1963, or whether it was after claimant filed his claim on April 15, 1964.

In view of the issues raised by claimant in this appeal it is unnecessary to digest at length the testimony of Dr. Forsyth or Dr. Samson Wennerman, who testified on behalf of claimant, or of Dr. Marshall B. Conrad, who was called by the employer and insurer, except to say that neither Dr. Wennerman nor Dr. Conrad found that claimant suffered a herniated intervertebral disc, and both found that claimant had a

congenital deformity of the upper part of the sacrum. In general they seem to have agreed that claimant had a low back sprain and a congenital defect of the back. Their opinions as to his disability, however, varied from 5% as expressed by Dr. Conrad to 15% as stated by Dr. Wennerman.

During his direct examination claimant testified that Buford Smith and Charles Summers were in his vicinity when he fell. On cross-examination he stated that he believed Smith was on the timber rack with him at the time, but that he was not sure whether Summers, a truck driver, had left the truck. He admitted that he did not mention his fall to either one, but insisted that they saw him fall. Both Smith and Summers were called as witnesses by the employer and insurer. The substance of Smith's testimony was that he couldn't remember whether claimant fell off of a stack of timbers in September, 1963; that he may have; that everybody on the job has fallen at one time or another; and that he couldn't remember whether claimant ever told him he had injured his back and arm while working. Summers, when asked whether he had seen claimant fall from a stack of timbers at the employer's yard, flatly answered, "No"; and on cross-examination stated he had never seen claimant fall.

■ As stated, the Industrial Commission adopted the referee's findings that claimant had sustained a compensable accident but denied compensation because claimant failed to give the employer the notice of the time, place and nature of his injury as required by the Workmen's Compensation Law. Section 287.420, Laws 1965, p. 410, in effect at the time of the award, which differs only immaterially from the section it superseded, reads:

"No proceedings for compensation under this chapter shall be maintained unless written notice of the time, place and nature of the injury, and the name and address of the person injured, have been given to the employer as soon as prac-

ticable after the happening thereof but not later than thirty days after the accident, unless the division or the commission finds that there was good cause for failure to give the notice, or that the employer was not prejudiced by failure to receive the notice. No defect or inaccuracy in the notice shall invalidate it unless the commission finds that the employer was in fact misled and prejudiced thereby."

The obvious purpose of that section is to give the employer a timely opportunity to investigate the facts as to whether an accident did occur, and, if it did, to promptly furnish medical attention to the employee to minimize the injury. Brown v. Douglas Candy Co., Mo.App., 277 S.W.2d 657. As the language of § 287.420 indicates, the giving of a written notice is not an absolute, unconditional prerequisite to the claimant's recovery of compensation, for it empowers the Commission to allow compensation if it finds there was "good cause" for failure to give such notice, or that the employer was not "prejudiced" by failure to receive it. Beatty v. Chandeysson Electric Co., 238 Mo.App. 868, 190 S.W.2d 648. Thus the failure to give the required notice has been held excusable for good cause where at the time the accident occurred the injury appeared trivial to the employee and its seriousness did not become apparent until more than 30 days had elapsed. State ex rel. Buttiger v. Haid, 330 Mo. 1030, 51 S.W.2d 1008; Reeves v. Fraser-Brace Engineering Co., 237 Mo.App. 473, 172 S.W. 2d 274. Furthermore, if the employer admits that he had actual knowledge of the accident at the time it occurred it has been held that the employer could not have been prejudiced by a failure to receive the statutory written notice, and compensation has been allowed. McFall v. Barton-Mansfield Co., 333 Mo. 110, 61 S.W.2d 911. Where, however, the employer does not admit that he had actual knowledge the issue becomes one of fact; if the employee produces substantial evidence that the employer had such knowledge he thereby makes a prima

facie showing of want of prejudice, and the burden of bringing forth evidence to prove he was prejudiced shifts to the employer. Brown v. Douglas Candy Co., supra. But Section 287.420 places the burden of proof upon the claimant to produce competent and substantial evidence that the written notice was given or to establish a statutory excuse for failure to do so; and where neither written notice or actual knowledge is shown by a claimant the burden rests on him to supply evidence and obtain the Commission's finding that no prejudice to the employer resulted. State ex rel. Buttiger v. Haid, supra; Brown v. Douglas Candy Co., supra.

We refer to these interpretations and applications of § 287.420 because of their relevance to the points raised by claimant on appeal. Tacitly conceding that no written notice was given and that the employer had no actual knowledge of any accident, claimant contends that as a matter of law no prejudice to the employer was shown by claimant's failure to give the written notice within 30 days. Claimant appears to believe that the burden was on the employer to prove that he was prejudiced. On the contrary, under the circumstances existing in this case the burden was on claimant to show that the employer had not been prejudiced. Brown v. Douglas Candy Co., supra. Claimant not only failed to sustain that burden but the evidence as a whole, including his own, shows that the employer was in fact prejudiced in that he was deprived of the opportunity to make a timely investigation of the facts regarding claimant's accident, and a like opportunity to minimize whatever injuries claimant may have suffered at the time of his fall. It is a matter of common knowledge that the memory of most individuals for facts and details fades with the passage of time. There can be no better example of that than claimant's own inability

to state the date upon which he fell, the day of the week, or even the approximate time of the day; and to come no closer than that it occurred in the first part of the month of September, 1963, sometime in the morning. Prejudice to the employer's opportunity to make a timely investigation was further shown by the fact that of the two witnesses whom claimant stated saw him fall, one testified he could not remember seeing claimant fall and the other flatly denied that he had seen claimant fall.

Regarding the deprivation of the employer's opportunity to promptly furnish medical attention to minimize his injury, claimant seizes upon an excerpt from Dr. Conrad's testimony that he had only been requested to make an examination of claimant on March 21, 1964, but if he had been going to treat him he would have recommended claimant be fitted with a low back support, use of a hard bed, application of heat, and restriction of his activities by the avoidance of heavy lifting. Claimant asserts that this was the same treatment prescribed by Dr. Forsyth (not, however, until November 1 or 2, 1963) and hence that the employer was not prejudiced. But the question is not what Dr. Conrad would have recommended on March 21, 1964, six months after the accident, or what Dr. Forsyth prescribed on November 1, or even on October 19, 1963 when claimant first consulted him. The question is what the result would have been had the employer been afforded the opportunity to promptly furnish medical attention after claimant's fall. Having failed to give written notice of the accident, and having admitted that the employer did not have actual knowledge, it was incumbent upon claimant to prove that the employer was not prejudiced in that his injury could not have been minimized if his employer had been afforded an opportunity to provide him with such proper medical attention within the statu-

tory time after the accident. His own evidence showed that the opposite was true. According to his own testimony he had only moderate pain when he arose from his fall, although he knew then that he was hurt. The pain in his back not only did not subside, but became increasingly worse as he continued his employment which required heavy lifting and other strenuous activity. And because of this worsening condition, Dr. Forsyth, who saw him several times between October 19 and November 1, 1963, eventually recommended that he obtain other and less rigorous work. The only conclusion which can be drawn is that claimant's failure to give either written or oral notice to his employer and his continued activity caused his injury to become worse.

■■■ Claimant next asserts that the Circuit Court should have remanded the final award to the Industrial Commission with directions to determine the issues of good cause and lack of prejudice. That argument assumes that in every case the Commission must make a specific finding on those issues, and that it did not do so in the instant case. The wording of Section 287.420 does not support claimant's first assumption. Note that it reads: "No proceedings for compensation * * * shall be maintained unless written notice * * * have been given to the employer as soon as practicable after the happening thereof but not later than thirty days after the accident, unless the division or the commission finds that there was good cause for failure to give the notice, or that the employer was not prejudiced by failure to receive the notice. * * *" As we construe that part of the statute it would seem to require a finding that good cause existed or that the employer was not prejudiced only when the Commission allows compensation even though the required written notice was not given. And even in such cases, where the Commission makes

a general award in favor of the claimant and allows compensation, it has long been held that such a general finding necessarily implies the finding of every fact necessary to support it, including that of good cause or lack of prejudice. State ex rel. Buttiger v. Haid, 330 Mo. 1030, 51 S. W.2d 1008; Newman v. Rice-Stix Dry Goods Co., 335 Mo. 572, 73 S.W.2d 264, 94 A.L.R. 751; Beatty v. Chandeysson Electric Co., 238 Mo.App. 868, 190 S.W.2d 648. As to claimant's second assumption, if the statute does require a finding as to good cause or prejudice, then the cases cited would support the proposition that the Commission's general award denying compensation necessarily implies that it found there was no good cause for claimant's failure to give the required notice, or that the employer was prejudiced by such failure, or both. The entire record plainly shows that the issues of good cause and prejudice were raised and disputed issues throughout the hearing before the referee and on review by the Commission. Furthermore, claimant is not now in a position to complain that specific findings were not made as to such issues because he never requested the referee or the Commission to include such findings. Mershon v. Missouri Public Service Corp., 359 Mo. 257, 221 S.W.2d 165; Williams v. International Shoe Co., Mo. App., 213 S.W.2d 657; Jones v. Remington Arms Co., Mo.App., 209 S.W.2d 156.

■■■ In his concluding point claimant maintains that since a minor need not file a claim within a year after his accident, a minor should not be required to file a written notice or to give actual notice of his accident within thirty days. This argument overlooks or disregards the differences in the applicable statutes. It is true that the statute of limitation does not begin to run until a minor's disability is removed by the appointment of a guardian. But this is so only because the statute, § 287.430, as amended, Laws 1965, p. 410, after re-

quiring the filing of a claim within one year under varying circumstances, provides: "* * * In all other respects the limitations shall be governed by the law of civil actions other than for the recovery of real property, but the appointment of a guardian shall be deemed the termination of legal disability * * *." Allen v. St. Louis-San Francisco Ry. Co., 338 Mo. 395, 90 S.W.2d 1050, 105 A.L.R. 1222; Hugelman v. Beltone Kansas City Hearing Service Co., Mo.App., 389 S.W.2d 220. There is no corresponding provision in § 287.420 exempting a minor from the requirement to give written notice, and in the absence of such an exemption § 287.020(1) would govern the situation. It is there provided, in part: "* * * The word 'employee' shall also include all minors who work for an employer, whether or not such minors are employed in violation of law, and all such minors are hereby made of full age for all purposes under, in connection with, or arising out of this chapter." Accordingly, it has been repeatedly held that for all purposes arising under the Workmen's Compensation Law, except that of filing a claim, a minor stands emancipated. Sommers v. Hartford Accident & Indemnity Co., Mo.App., 277 S.W.2d 645; Pruitt v. Harker, 328 Mo. 1200, 43 S.W.2d 769; Matlock v. A. Leschen & Sons Rope Co., Mo.App., 43 S.W.2d 871.

The judgment is affirmed.

PER CURIAM.

The foregoing opinion by DOERNER, C., is adopted as the opinion of this court. Accordingly, judgment affirmed.

RUDDY, Acting P. J., WOLFE, J., and GEORGE W. CLOYD, Special Judge, concur.